# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

———————

No. 98-1932

———————

| | | |
|---|---|---|
| Richard James Kellogg, | * | |
| | * | |
| Plaintiff-Appellant, | * | Appeal from the United States |
| | * | District Court for the |
| v. | * | District of Minnesota. |
| | * | |
| Erik Skon, Warden, | * | |
| | * | |
| Defendant-Appellee. | * | |

———————

Submitted: December 17, 1998

Filed: May 10, 1999

———————

Before McMILLIAN, JOHN R. GIBSON, and MAGILL, Circuit Judges.

———————

JOHN R. GIBSON, Circuit Judge.

Richard Kellogg petitioned the district court[1] for a writ of habeas corpus pursuant to 28 U.S.C. § 2254(a) (1994) following his conviction in Minnesota state court on two counts of criminal sexual conduct. The convictions resulted from the sexual abuse of his girlfriend's six-year-old daughter. The district court denied

———————

[1]The Honorable Paul A. Magnuson, Chief Judge, United States District Court for the District of Minnesota.

Kellogg's petition but granted his application for a certificate of appealability on two issues: whether the prosecutor's commenting on the presumption of innocence and calling him a "monster" during closing argument violated his constitutional rights and whether he was denied effective assistance of counsel.[2] We affirm the denial of the writ.

The arguments presented on appeal require only a general statement of the facts without going into the explicit detail contained in the trial testimony. Kellogg had an on again off again relationship with Laura Fiscus. Between bouts of living with Kellogg in various states, Fiscus would reunite with her husband. At a time when Fiscus was living with Kellogg, he sexually abused L.A.M., Fiscus's six year old daughter.

L.A.M. testified to the abuse. A detective, a social worker, L.A.M.'s father, a psychologist, a child protection worker, and a child psychologist all testified that L.A.M. related to them, in varying degrees, the details of Kellogg's abuse. The psychologist and child psychologist gave their expert opinions that L.A.M. had been sexually abused.

M.J.M., L.A.M.'s eight-year-old sister, testified that Kellogg had sexually abused her when she was four years old. Several witnesses testified that M.J.M. had told them of the abuse, and the psychologists gave their expert opinions that she had been abused.

---

[2]Kellogg also complains of government witnesses vouching for their own and other witnesses' testimony, the prosecutor's comments on witness credibility, and the prosecutor's implication that physical evidence of semen existed. However, the district court did not grant the certificate of appealability on these issues; thus, we only address them as they relate to the ineffective assistance of counsel claim. See Ramsey v. Bowersox, 149 F.3d 749, 759 (8th Cir. 1998) (appellate review is limited to issues specified in the certificate of appealability), cert. denied, 119 S.Ct. 1083 (1999).

Kellogg testified that he did not sexually abuse L.A.M. He argued that Fiscus and L.A.M.'s father had told L.A.M. to fabricate the story of Kellogg's abuse. Christine Childs, who babysat for L.A.M., corroborated Kellogg's contention. She testified that L.A.M.'s father had visited L.A.M. just before L.A.M. accused Kellogg of sexual abuse, that Fiscus tried to convince her to lie about whether she was babysitting on the day of the abuse, and that Fiscus "rehearsed" L.A.M. regarding that part of L.A.M.'s story.

During closing argument, the prosecutor commented on the credibility of several witnesses. She implied that physical evidence of semen existed, but admitted she could not produce it. The prosecutor stated that everyone was entitled to the presumption of innocence and that when the trial started Kellogg had it. However, she then stated, "[T]he testimony has removed it, the facts have removed it and the defendant now stands naked before you and you can see him for what he really is: a sexual deviant, a liar and an abuser of little children . . . . [T]he presumption of innocence is no longer protecting and shielding this defendant because it has crumpled and fallen into dust." The prosecutor also stated, "Do you think that . . . [L.A.M.] is a lying monster . . . . Or do you think, as the State does, that . . . the monster is someone else." Kellogg's attorney objected to none of these tactics, nor was the jury instructed to disregard.

When Kellogg's attorney closed, he stated that Kellogg was entitled to the presumption of innocence. The court instructed the jury that the defendant's arrest and being brought to trial "should not be considered by you as in any way suggesting his guilt. The defendant is presumed to be innocent . . . and that presumption abides with him unless or until he has been proved guilty of the charge beyond a reasonable doubt." The court also instructed the jurors that counsel's arguments were not evidence and that the jurors were the sole judges of credibility.

Kellogg contends that the prosecutor's comments during closing argument were improper, violating his constitutional rights, and that he did not receive effective assistance of counsel.

Kellogg argues that the presumption of innocence is so specific a right that the prosecutor's infringement upon it necessarily violates the Constitution. He, therefore, concludes that we need not engage in "fundamental fairness" due process analysis. See Donnelly v. DeChristoforo, 416 U.S. 637, 643 (1974) (infringement on certain specific rights obviates due process analysis). However, the Supreme Court's reasoning in Kentucky v. Whorton, 441 U.S. 786 (1979), forecloses Kellogg's argument. In Whorton, the Supreme Court held that a trial judge's failure to give a requested instruction on the presumption of innocence did not "in and of itself violate the Constitution," but had to be "evaluated in light of the totality of circumstances . . . to determine whether the defendant received a constitutionally fair trial." Id. at 290. Thus, Kellogg "must show that the alleged improprieties were so egregious that they fatally infected the proceedings and rendered his entire trial fundamentally unfair." Hamilton v. Nix, 809 F.2d 463, 470 (8th Cir. 1987) (quotations and citation omitted), cert. denied, 483 U.S. 1023 (1987). Under this standard, a petitioner "must show that there is a reasonable probability that the error complained of affected the outcome of the trial--i.e., that absent the alleged impropriety, the verdict probably would have been different." Id. In determining whether the prosecutor's argument rendered the trial unfair, we consider the totality of the circumstances. See Walls v. Bowersox, 151 F.3d 827, 836 (8th Cir. 1998), cert. denied, No. 98-8015, 1999 WL 66941 at *1, (U.S. April 19, 1999); Antwine v. Delo, 54 F.3d 1357, 1363 (8th Cir. 1995) (listing factors), cert. denied, 516 U.S. 1067 (1996).

The prosecutor stated that the presumption of innocence had been "removed," and it was no longer "protecting and shielding" the defendant. This statement was improper, a misstatement of law. The presumption remains with the defendant through every stage of the trial, most importantly, the jury's deliberations. It is extinguished

only upon the jury's determination of guilt beyond a reasonable doubt. See Mahorney v. Wallman, 917 F.2d 469, 471 n.2 (10th Cir. 1990). However, we are not convinced the trial was fundamentally unfair. The defense attorney stressed the presumption of innocence in his closing argument, and the trial judge instructed the jury to presume Kellogg was innocent. The trial judge did not place his imprimatur on the prosecutor's argument by overruling the defendant's objection, as in Mahorney, 917 F.2d at 473, a case Kellogg heavily relies on. We also are not persuaded that there was a reasonable probability that the verdict would have been different absent the prosecutor's misstatement. The misstatement was remedied and the evidence in the case was substantial. L.A.M. testified to the abuse and two experts gave their opinion that L.A.M. had been abused. M.J.M. testified that Kellogg had abused her in a similar fashion. Against a claim of forced fabrication, the prosecution produced numerous witnesses who testified that L.A.M. had told each of them a similar story.

In addition to improperly commenting on the presumption of innocence, the prosecutor also referred to Kellogg as a "monster," a "sexual deviant," and a "liar."[3] Not only are these comments an improper "personal expression of [the] defendant's culpability," United States v. Singer, 660 F.2d 1295, 1303 (8th Cir. 1981), cert. denied, 454 U.S. 1156 (1982), but the "monster" and "sexual deviant" comments also create inflammatory prejudice. They compel the jury to focus on the grossness of the alleged conduct, rather than whether the defendant engaged in the conduct. They have no place in a courtroom. However, the question is not whether the prosecutor's remarks are "undesirable or even universally condemned." Darden v. Wainwright, 477 U.S. 168,

---

[3]The certificate of appealability certified the prosecutor's reference to L.A.M. as a "monster" and the prosecutor's argument regarding the presumption of innocence. The "sexual deviant" and "liar" comments were interwoven in the prosecutor's discussion of the presumption of innocence, and the district court did not specify the precise comments regarding the presumption of innocence for which it was granting the certificate. Even assuming the comments are appropriately before us, we reject Kellogg's argument.

181 (1986) (prosecutor's reference to defendant as an "animal" held not a due process violation). The remarks must make the entire trial fundamentally unfair. See id. The court instructed the jury that they were to make their decisions based on the evidence and that counsel's arguments were not evidence. These comments did not "manipulate or misstate the evidence," nor did they "implicate other specific rights of the accused." Id. at 180-81. The weight of the evidence was heavy, and there is no reasonable probability that the verdict would have changed absent the comments, even considering the cumulative effect of the prosecutor's remarks.

Kellogg next contends that he received ineffective assistance of counsel. His primary claims[4] are that counsel should have objected to the prosecutor's belittling of the presumption of innocence, name calling, implying that physical evidence of semen existed, and vouching for witnesses.

An ineffective assistance of counsel claim presents a mixed question of law and fact. See Frey v. Schuetzle, 151 F.3d 893, 899 (8th Cir. 1998). We review the district court's legal conclusions de novo and its factual findings for clear error. See id. "The benchmark for judging any claim of ineffectiveness must be whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result." McGurk v. Stenberg, 163 F.3d 470, 473 (8th Cir. 1998) (quotations omitted). Kellogg must show that counsel's performance was deficient and prejudiced his defense. See id. In showing the deficiency, Kellogg "must overcome 'a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance.'" Id. (quoting Strickland v. Washington, 466 U.S. 668, 689 (1984)). Once deficient performance has been established, petitioner

[4]Kellogg makes various other claims of ineffective assistance, contending that counsel should have objected to witness vouching, witnesses' testimony regarding what L.A.M. told them, and certain expert testimony. He also contends counsel should have been more diligent in tracking down proof for his fabrication theory. These contentions are wholly without merit.

must demonstrate "a reasonable probability that but for counsel's unprofessional errors, the result of the proceeding would have been different."  Id.

We reject Kellogg's claims that counsel's failure to object to the prosecutor's belittling of the presumption of innocence and name-calling denied him effective assistance of counsel.  We have already discussed how the verdict would not have changed even if the prosecutor had not engaged in the behavior.  Thus, even if counsel had objected and an instruction to disregard were given, Kellogg has failed to demonstrate that "but for" counsel's professional errors, the result would have been different.  As for the implication that physical evidence of semen existed, the prosecutor admitted that she did not have the evidence; thus, failing to object was not unreasonable.  The vouching was merely argument that the evidence supported the witnesses' credibility and, in some instances, was consistent with Kellogg's own testimony that he did not question certain witnesses' credibility.  It was reasonable for counsel not to object.  Even if it were not, the court instructed the jurors that they were the sole judges of credibility, and we could hardly say the failure to object would have changed the verdict or so undermined the adversarial process that the trial could not be relied on.

Affirmed.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.