# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 08-3683

_____

United States of America,                    *
                                             *
            Appellee,                         *
                                             *   Appeal from the United States
      v.                                      *   District Court for the
                                             *   Western District of Missouri.
Jason E. Branch, Sr., also known as          *
Josh Edwards, also known as Jason            *
Edwards, also known as Joston                *
Edwards, also known as Joston Elliott,       *
                                             *
            Appellant.                        *

_____

Submitted: September 25, 2009
Filed: December 30, 2009

_____

Before BYE, ARNOLD, and SMITH, Circuit Judges.

_____

SMITH, Circuit Judge.

      Jason Branch, Sr. was convicted of one count of mail fraud, in violation of 18
U.S.C. § 1341; three counts of wire fraud, in violation of 18 U.S.C. § 1343; and four
counts of money laundering, in violation of 18 U.S.C. § 1956(a)(1)(A)(1). On appeal,
Branch argues that the district court[1] erred in (1) denying his motion for a mistrial

_____

[1]The Honorable Gary A. Fenner, United States District Judge for the Western
District of Missouri.

after a prosecution witness shouted at Branch from the witness stand; (2) not ordering a mistrial *sua sponte* during closing arguments when the prosecution made unduly prejudicial remarks; and (3) applying sentencing enhancements under U.S.S.G. § 2B1.1(b)(1)(I), for a loss amount in excess of $1 million; § 2B1.1(b)(2)(C), for over 250 victims; and § 3B1.1(a), for being an organizer or leader of a criminal activity that was otherwise extensive. Finally, Branch argues that his sentence is substantively unreasonable. We affirm.

## I. *Background*

In 2006, Branch was indicted for conspiracy, mail fraud, wire fraud, conspiracy to commit money laundering, and money laundering. To summarize, Branch, using a religious-based appeal, defrauded people seeking lines of credit. The scheme's victims paid Branch an up-front fee, but Branch never furnished the loan the fee was supposed to guarantee.

The mistrial issue arises from an unsolicited comment that a prosecution witness made during the prosecution case-in-chief. Gayle Prescod O'Deen testified that she contacted a man named Josh Edwards to obtain financing for her business. O'Deen testified that she provided Edwards with $25,000 to obtain a loan for her business. While O'Deen was testifying about transferring the money to Edwards, she interjected, unsolicited, "How dare you, Mr. Edwards, how dare you." The district court asked the jury to leave the courtroom, and O'Deen began apologizing to the court for her emotional outburst.

After the jury left the courtroom, the district court told O'Deen, "I can't let you have that kind of an emotional response to anything here." Branch immediately moved for a mistrial, noting that no question was pending at the time of O'Deen's outburst. The district court responded, "I don't think there was [a question pending] either, and she did not refer to the defendant by his correct name either, although she did look at him and was addressing the defendant." O'Deen was never asked to identify "Mr.

Edwards." The district court denied Branch's request for a mistrial but gave the following instruction to the jury:

> Ladies and gentlemen, I am instructing you all that you are to disregard Miss [O'Deen's] personal address to who she referred to as Mr. Edwards and her comments just before I excused you. I think you all understand that a person's guilt or innocence ultimately is for you all to decide based on the instructions I gave you and you are to disregard her remarks just before I excused you all.

The trial resumed. During the government's closing argument, the prosecutor repeatedly called Branch a "fraudster." The prosecutor also told the jurors: "Everything [Branch] does is a fraud. Everything he does is wrong. Everything he tried to tell you on that stand is incorrect." During the rebuttal phase of closing arguments, the prosecutor stated: "Jason Branch is a fraud. His whole life is a fraud."

The jury found Branch guilty on eight of the nine tried counts. During sentencing, the district court adopted the presentence investigation report's (PSR) finding of a loss amount between $1,000,000 and $2,500,000, which levied a 16-level enhancement under U.S.S.G. § 2B1.1(b)(1)(I). Branch received a two-level enhancement under § 2B1.1(b)(2)(C) based on the existence of more than 250 fraud victims. Branch also received a four-level leadership enhancement under § 3B1.1. The district court sentenced Branch to 264 months' imprisonment.

## II. *Discussion*

On appeal, Branch argues that the district court erred in (1) denying his motion for a mistrial after O'Deen shouted at Branch from the witness stand; (2) not calling for a mistrial *sua sponte* during closing arguments; and (3) applying three sentencing enhancements, resulting in an unreasonable sentence.

## A. *Alleged Trial Errors*

Branch first argues that the district court should have granted his request for a mistrial after a prosecution witness made an emotionally-charged outburst from the witness stand directed at Branch. Branch contends that although the district court instructed the jury to ignore the incident, the witness's outburst was highly prejudicial and tainted the trial to the extent that the court should have declared a mistrial. The government responds that the district court did not abuse its discretion because the remark was not made in response to a question, was fleeting, and was very limited in scope. In addition, the government points out that the district court issued an immediate, forceful limiting instruction following the remark.

We review the denial of a motion for mistrial for an abuse of discretion. *United States v. Peoples*, 250 F.3d 630, 635 (8th Cir. 2001). A district court's determination of whether a mistrial should be declared as a result of a witness's improper comment is reviewed for abuse of discretion. *United States v. Sherman*, 440 F.3d 982, 987 (8th Cir. 2006).

The outburst in question occurred during O'Deen's testimony. The prosecution asked O'Deen about her transfer of $25,000 to a man that she knew as Josh Edwards. The following colloquy occurred:

QUESTION: And if you would take a look at the screen you will see an exhibit there. That's 30-A, can you identify that, ma'am?

O'DEEN: That's the email from Josh giving us the bank and the account and routing number that the money was to be wired to.

QUESTION: That's from you, can be financed [sic] at Yahoo.com.

O'DEEN: That's correct. How dare you, Mr. Edwards, how dare you.

COURT: Ma'am.

O'DEEN: I am sorry.

COURT: Ladies and gentlemen, would you go into the jury room for a moment, please.

O'DEEN: I am sorry.

COURT: Don't say anything more right now, please.

After the jury left the courtroom, Branch moved for a mistrial, which the district court denied.

We have held that the "exposure of a jury to improper testimony ordinarily is cured by measures less drastic than a mistrial, such as an instruction to the jury to disregard the testimony." *Id*. (internal citation omitted). We examine the overall prejudicial effect in "the context of the testimony and the prejudice created by it, as juxtaposed against the strength of the evidence of the defendant's guilt." *Id*. at 988 (internal citation omitted). When a district court provides a remedial instruction to the jury, "this court must still determine whether the verdict was 'substantially swayed' by the prejudicial comment." *United States v. Urick*, 431 F.3d 300, 304 (8th Cir. 2005) (quoting *United States v. Coleman*, 349 F.3d 1077, 1087 (8th Cir. 2003)). We will affirm a conviction, despite the introduction of an inadvertent prejudicial comment, when there is "substantial evidence" of guilt. *Id*.

Branch relies upon *United States v. Street*, 548 F.3d 618 (8th Cir. 2008), to support his argument that O'Deen's comment was unduly prejudicial. In *Street*, the defendant was convicted of aiding and abetting a murder in furtherance of a drug trafficking offense. *Id*. at 621. On direct examination, one of the government's four jailhouse informants unexpectedly testified that the defendant had taken and failed a

polygraph test. *Id*. at 627. The court denied the defendant's motion for a mistrial. *Id*. at 628. The court instead instructed the jury that "polygraph examinations are not scientifically reliable and they're not admissible in evidence." *Id*. On appeal, we held that the trial court abused its discretion in denying the defendant's motion for a mistrial. *Id*. at 629. We found that the case against the defendant was close and that, in the context of the whole trial, knowledge that the defendant failed a polygraph was extremely damaging and prejudicial to him, such that a curative instruction was insufficient. *Id*.

A witness's representation that a defendant failed a polygraph test and a witness saying "[h]ow dare you" to a defendant she is accusing of swindling her are not similarly prejudicial. The jury was already aware that O'Deen was accusing Branch of illegality and was testifying against him before she made her inappropriate comment. In contrast, the jury in *Street* had no prior knowledge that the defendant took, much less failed, a polygraph test. Also, the evidentiary case against Branch was not close, as it was in *Street*. A review of the comment in the context of the five-day trial does not reveal substantial prejudice to Branch.

The Sixth Circuit set forth five factors relevant to whether a mistrial should be granted after a witness makes an improper statement during trial: (1) whether the remark was unsolicited; (2) whether the government's line of questioning was reasonable; (3) whether a limiting instruction was immediate, clear, and forceful; (4) whether any bad faith was evidenced by the government; and (5) whether the remark was only a small part of the evidence against the defendant. *United States v. Caver*, 470 F.3d 220, 243 (6th Cir. 2006).

Applying *Caver*, we conclude that the district court did not abuse its discretion by denying the motion for a mistrial. O'Deen's remark was unresponsive to the government's pending question, which concerned the email address on an exhibit. The

-6-

line of questioning directly related to the charges against Branch and was reasonable. The district court gave an immediate limiting instruction to disregard the remark, which was forceful and clear. There is no showing of bad faith on the part of the government. And finally, the remark was an isolated one, which formed a small part of a long trial in which overwhelming evidence of Branch's guilt was elicited. *See also United States v. Lewis*, 787 F.2d 1318, 1324–25 (9th Cir. 1986) (mistrial properly denied where witness spoke to defendant from stand); *United States v. Cook*, 592 F.2d 877, 879–80 (5th Cir. 1979) (mistrial properly denied where witness spoke of threats by a defendant).

Branch also argues that the district court should have *sua sponte* granted a mistrial during the government's closing argument. Branch contends that the prosecutor made abusive comments regarding Branch and expressed his personal opinion that Branch was lying and guilty. Also, in the rebuttal phase of the government's closing argument, Branch argues that the prosecutor admonished the jury that believing Branch was "beyond reason" and doing so would make them his next fraud victims. As a result of this prejudicial behavior, Branch contends, he was denied a fair trial. Branch did not object during any portion of the government's closing argument or rebuttal.

The government responds that there is no plain error because the comments were supported by the evidence and were fairly descriptive of Branch and his conduct. In addition, the government argues that there was overwhelming evidence of Branch's guilt and the comments did not affect any of Branch's substantial rights.

Prosecutorial remarks not objected to at trial are reviewed for plain error, and we "will reverse only if the district court's failure to take action seriously affected both the defendant's substantial trial rights and the fairness, integrity or public reputation of judicial proceedings." *United States v. Bentley*, 561 F.3d 803, 810 (8th Cir. 2009)

(internal quotations and citation omitted). A district court is "vested with broad discretion in controlling closing arguments and we will reverse only on a showing of abuse of discretion." *United States v. Eldridge*, 984 F.2d 943, 946 (8th Cir. 1993). We will reverse an improper remark during closing argument without an objection only under "exceptional circumstances." *Id*. at 947. Branch "is entitled to relief only if the error would result in a miscarriage of justice if left uncorrected." *United States v. McIntosh*, 23 F.3d 1454, 1457 (8th Cir. 1994) (internal citations and quotations omitted).

"To obtain a reversal for prosecutorial misconduct, the defendant must show that (1) the prosecutor's remarks were improper, and (2) such remarks prejudiced the defendant's rights in obtaining a fair trial." *Bentley*, 561 F.3d at 809. If the comments are improper, we then consider "the cumulative effect of the improprieties, the strength of the evidence against the defendant, and whether the district court took any curative action." *United States v. Milk*, 447 F.3d 593, 602 (8th Cir. 2006).

We have held that a prosecutor's use of descriptive phrases is not misconduct when the prosecutor was not making personal attacks against the defendant and was not attempting to merely inflame the passion of a jury. *See Bentley*, 561 F.3d at 803. In *Bentley*, we found that the use of the term "sexual predator" in describing the defendant was only a descriptive phrase that furthered the government's theory of the case, which distinguished that case from cases where the invectives serve only to inflame passions. *Bentley*, 561 F.3d at 811. We further concluded that the trial was a fair one and that the remark would not have affected the outcome of the trial given the strength of the evidence against the defendant. *Id*.

Similarly, in *United States v. Shoff*, we rejected a defendant's arguments for reversal under a plain error standard where the prosecutor in opening argument called the defendant a "con man," and in closing argument stated that the defendant "exhibits

all of the signs of a liar" and "is still making false representations to [the jury] today." 151 F.3d 889, 893 (8th Cir. 1998). We explained:

> The prosecutor's opening was limited to describing what the government would attempt to prove. The use of colorful pejoratives is not improper. Likewise, the prosecutor's closing was carefully limited to arguing what the evidence had proved, rather than improperly expressing the prosecutor's personal opinion. There was no misconduct.

*Id.*

We have also held that when a prosecutor's remarks are arguably improper, the defendant must still prove that these remarks made the entire trial fundamentally unfair and the verdict would have changed absent these comments. *See Kellogg v. Skon*, 176 F.3d 447 (8th Cir. 1999). In *Kellogg*, the prosecutor referred to the defendant as a "monster," "sexual deviant," and a "liar." *Id*. at 450. We were troubled by the impropriety of the comments but found the comments did not unfairly prejudice the defendant. *Id*. According to this court, "[t]he weight of the evidence was heavy, and there is no reasonable probability that the verdict would have changed absent the comments, even considering the cumulative effect of the prosecutor's remarks." *Id*. at 452.

The question we ask is not whether the prosecutor's remarks are "undesirable or even universally condemned." *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (holding that a prosecutor's reference to defendant as an "animal" was not a due process violation). Rather, to be found to be improper, the remarks must make the entire trial fundamentally unfair. *Kellogg*, 176 F.3d at 452. As long as the comments do not "manipulate or misstate the evidence," or "implicate other specific rights of the accused[,]" *Darden*, 477 U.S. at 180–81, the fundamental fairness of the trial remains intact.

The cases upon which Branch relies—cases which indicate this court's disdain for "name-calling" by the prosecution—do not support his argument. In *United States v. Carter*, we held that the prosecutor's description of the defendant as a "con man" and "deviate [sic]," among other things, during closing argument was "improper." 410 F.3d 1017, 1026 (8th Cir. 2005). However, "because the prosecution presented substantial and persuasive evidence of [the defendant's] guilt, we conclude that the prosecutor's comments did not result in a miscarriage of justice . . . ." *Id*. Similarly, in *United States v. Singer*, we agreed that calling the accused "crooks" was "clearly improper," but we found no basis for reversing the jury's verdict. 660 F.2d 1295, 1304 (8th Cir. 1981).

In the present case, Branch objects to the prosecutor calling him a "fraudster" and telling jurors that "[e]verything [Mr. Branch] does is a fraud. Everything he does is wrong. Everything he tried to tell you on that stand is incorrect." Branch also objects to the prosecutor saying "Jason Branch is a fraud. His whole life is a fraud."

The comments to which Branch objects are descriptive phrases and "colorful pejoratives." The government's entire case attempted to prove that Branch had defrauded people, and therefore the closing was limited to what the government (and ultimately the jury) believed the evidence had proved, rather than merely improperly expressing the prosecutor's personal opinion.

Even if we were to characterize the government's comments as improper—which we do not—the comments did not result in a miscarriage of justice. Evidence at trial showed that since moving from Texas in 2001, Branch had personally devised and conducted numerous fraud schemes, including real estate schemes, line-of-credit schemes, multi-level marketing schemes, and straight investment schemes. Trial evidence showed that Branch did not operate a Ponzi scheme in which some victims received something in order to entice others. Branch

-10-

spent all the money he received from these schemes on himself and he failed to provide any victim with a return from the program in which they had invested. Branch did not make a showing that there were any "exceptional circumstances" which would warrant a reversal. *See Eldridge*, 984 F.2d at 947.

Branch also argues that the government tried to convince the jurors that they themselves would be victims if they believed Branch. Branch misinterprets the government's argument. The passage in question comes from the rebuttal phase of closing argument, when the prosecutor said:

> [Mr. Branch's] intent from the beginning was to rip people off. When he says he was ashamed, he's only ashamed he got caught. That's it . . . . He just wants to play the same thing on you he played on everybody else. He thinks he can talk his way out of anything and that's what he's doing . . . . This man is guilty as charged . . . . There is no question about it. It's beyond reason and I will ask you to find Mr. Branch guilty of all these charges.

The prosecutor's comment implied that just as Branch lied to his investors, he was also lying to the jury while he was on the stand. Such an inference at closing argument is permissible. The prosecutor did not assert that the jurors would be victim's of Branch's alleged crimes. Neither the witness's outburst during trial nor the prosecutor's comments during closing argument were unduly prejudicial to Branch. Therefore, we hold that the district court did not abuse its discretion or commit plain error by failing to call for a mistrial.

## B. *Alleged Sentencing Errors*

In his final argument, Branch contends that the district court erroneously enhanced his sentence. Specifically, Branch argues that the district court wrongly determined that the amount of loss was more than $1,000,000, that there were more

than 250 victims, and that Branch's conduct warranted applying a § 3B1.1 leadership enhancement. In the alternative, Branch argues that even if the Guidelines were calculated correctly, the sentence is substantively unreasonable because a sentence of 264 months' imprisonment is greater than necessary to achieve the goals of sentencing under 18 U.S.C § 3553(a).

The government responds that the court appropriately enhanced Branch's sentence. Specifically, the government argues that the district court properly applied the factors set forth in § 3553(a) to Branch's conduct when it considered the fact that Branch relocated his fraud scheme to Missouri after a Texas court entered an injunction against him, preyed upon his victims' vulnerabilities, and continued his line-of-credit scheme even after his indictment. Therefore, the government concludes that a sentence of 264 months' imprisonment, which is at the low end of the applicable Guidelines range, is reasonable.

We review "for clear error the district court's factual findings underlying the imposition of a sentencing enhancement based on the defendant's role in the offense," *United States v. McDonald*, 521 F.3d 975, 978 (8th Cir. 2008) (quotation and citation omitted), "and examine de novo the application of the Guidelines." *United States v. Yah*, 500 F.3d 698, 702 (8th Cir. 2007). "[O]nly if we have a definite and firm conviction that a mistake has been made" will we reverse the sentencing court's factual findings. *United States v. Garcia*, 512 F.3d 1004, 1005 (8th Cir. 2008). "[S]entencing judges are only required to find sentence-enhancing facts by a preponderance of the evidence." *United States v. Farrington*, 499 F.3d 854, 859 (8th Cir. 2007).

The Guidelines prescribe substantial enhancements for Branch's conduct due to the loss amount and the number of victims. U.S.S.G. § 2B1.1(b)(1)(I) calls for an enhancement of 16 levels if the loss exceeded $1,000,000; § 2B1.1(b)(2)(C) calls for an enhancement of six levels if the offense involved 250 or more victims; and

§ 3B1.1(a) calls for an enhancement of four levels if the defendant was an organizer or leader of a criminal activity that involved five or more participants or was otherwise extensive.

Branch challenged the loss amount found in the PSR before sentencing. At sentencing, the government created a chart, Sentencing Exhibit 12, which listed each victim, whether the victim had testified at trial, and, if not, provided the exhibit number at sentencing where the victim's loss information could be found. FBI Special Agent Janet Lintner identified the chart and the underlying exhibits in her testimony, and all the exhibits were admitted into evidence at the sentencing hearing. The total amount of loss was $1,250,635.40, which was all documented by trial testimony or detailed interview reports and depositions. Branch's challenge to the loss amount is meritless. Branch has shown no meaningful errors in the government's evidence on loss amount. The district court did not err in basing its finding of loss amount on this evidence.

Evidence to support the enhancement for greater than 250 victims is derived from two principal sources: FBI Special Agent Erich Wiederhold and former Branch employees. Branch employees Phyllis Pugh and Marjorie Jardan, for example, both testified about processing large numbers of Poverty Breakers's (one of Branch's fraudulent companies) applications. INT Gold is an internet banking site. Agent Wiederhold testified that he reviewed INT Gold's subpoena response and determined that there were 1200 victims who had invested in J.E. Capital Group programs[2] and had their money (approximately $240,000) placed with INT Gold. Branch controlled these INT Gold accounts and the bulk of the money went out to Branch.

---

[2]J.E. Capital Group is the umbrella name for Branch's fraudulent schemes.

Finally, as to the § 3B1.1(a) enhancement for being an organizer or leader, ample evidence establishes that Branch both organized and led the fraudulent scheme leading to his indictment and conviction. The trial testimony from Branch employees Karen Weathers, Pugh, Jardan, and others, as well as from Branch himself, confirmed that Branch devised all of the schemes in this case and directed the activities of J.E. Capital Group and all of its employees. Branch's activities are "otherwise extensive" and therefore justify the enhancement's application. *United States v. Senty-Haugen*, 449 F.3d 862, 864 (8th Cir. 2006). The government produced evidence that showed Branch organized meetings of hundreds of people in Kansas City and across the United States. His schemes damaged hundreds of victims. Branch rented several business locations, and at the height of the fraud scheme, Branch employed more than 20 people and directed their activities in support of his scheme. By comparison, we found the tax scheme in *Senty-Haugen* to be "otherwise extensive" where 29 fraudulent income tax returns were filed resulting in approximately $71,000 of loss. *Id*.

It is true, as Branch argues, that information used to determine a defendant's relevant conduct must have "sufficient indicia of reliability to support its probable accuracy." *United States v. Kinshaw*, 71 F.3d 268, 272 (8th Cir. 1995). Conclusory statements in a PSR will not satisfy the government's burden to provide reliable evidence, and the mere conclusion of the PSR is an insufficient basis for a finding that the evidence before the sentencing judge supports the proposition of fact asserted therein. *United States v. Bluske*, 969 F.2d 609, 616 (8th Cir. 1992). Basic fairness requires that the evidence be identified and its reliability demonstrated. *Id*. In this case, the facts in the PSR were sufficiently identified by the government agents, who testified to their reliability. We will reverse only if we have a definite and firm conviction that an error has been made. *Garcia*, 512 F.3d at 1005. We have no such conviction in this case.

Branch also failed to meet his burden in proving that the application of a 264-month sentence was unreasonable. Branch contends that, even if the district court properly calculated the Guidelines range, the 264-month sentence he received was unreasonable under the factors enumerated in 18 U.S.C. § 3553(a). The government argues that Branch's within-the-Guidelines-range sentence was reasonable in light of the district court's § 3553(a) factors analysis. We agree.

In reviewing the sentence for reasonableness, we will apply "a standard akin to abuse of discretion." *United States v. Gallegos*, 480 F.3d 856, 858 (8th Cir. 2007). "A sentence within the Guidelines range is accorded a presumption of substantive reasonableness on appeal." *United States v. Phelps*, 536 F.3d 862, 868 (8th Cir. 2008) (quoting *United States v. Robinson*, 516 F.3d 716, 717 (8th Cir. 2008)). *See also, Gall v. United States*, 552 U.S. 38, 51 (2007). The factors relevant to the district court's obligation to impose a "reasonable" sentence are set forth in § 3553(a). The district court need not discuss every § 3553(a) factor in every case. *United States v. Jones*, 563 F.3d 725, 729 (8th Cir. 2009). Instead, "[t]he sentencing judge need only 'set forth enough to satisfy the appellate court that he has considered the parties' arguments and has a reasonable basis for exercising his own legal decision-making authority.'" *Id.* (quoting *Rita v. United States*, 551 U.S. 338, 356 (2007)).

The district court determined that Branch's offense level was 39 and his criminal history category was I, yielding a Guidelines range of 262 to 327 months' imprisonment. The court sentenced Branch near the bottom of this range. The district court discussed the relevant § 3553(a) factors when pronouncing sentence. The district court concluded that Branch had "just been a plague on the people that you have preyed upon and [a] pervasive thief who conducted yourself in a totally heartless and cold and cruel fashion toward the people you took into your trust . . . ."

Undaunted, Branch argues that the sentence is too harsh because he is a non-violent criminal and that some violent criminals get less-severe sentences. Branch cites no authority to stand for the proposition that the absence of violence should diminish the Guidelines calculation for non-violent offenses. Branch's second argument on this point—the Guidelines do not adequately take into account that he is less likely to commit new crimes because he will be much older when he is released from prison—is equally unconvincing. Although Branch does cite a study that shows recidivism declines as age goes up, the district court found as a matter of fact that Branch poses a high risk to the community. The district court found that when faced with a Texas injunction to cease operating his fraudulent schemes, Branch moved his operations to Missouri, and when indicted for federal crimes, Branch elected to continue to defraud new victims with the line-of-credit scheme. The district court thus concluded that a need exists to protect the public from Branch. We will only review the district court's findings of fact for clear error. *United States v. Killgo*, 397 F.3d 628, 631 (8th Cir. 2005); *United States v. Nichols*, 416 F.3d 811, 821 (8th Cir. 2005).

Here, the sentence imposed fell within the Guidelines range. Branch has offered neither convincing evidence nor a persuasive argument that this sentence is unreasonable. On this factual record, we do not find the district court's sentence to be unreasonable.

III. *Conclusion*

Accordingly, we affirm the judgment of the district court.

_____