# United States Court of Appeals
## For the Eighth Circuit

_____

No. 18-1406

_____

United States of America

*Plaintiff - Appellee*

v.

Mark A. Beckham

*Defendant - Appellant*

_____

Appeal from United States District Court
for the Eastern District of Missouri - St. Louis

_____

Submitted: January 18, 2019
Filed: March 8, 2019

_____

Before GRUENDER, WOLLMAN, and SHEPHERD, Circuit Judges.

_____

SHEPHERD, Circuit Judge.

Mark Beckham appeals his conviction for corruptly endeavoring to obstruct and impede the due administration of the internal revenue laws in violation of 26 U.S.C. § 7212(a). Beckham argues that the jury instructions were erroneous, that the

district court[1] erroneously admitted evidence and expert testimony, and that the district court should have granted his motion for a mistrial based on improper witness statements. Having jurisdiction under 28 U.S.C. § 1291, we affirm.

I.

In 2009 and 2010, Beckham prepared and filed tax returns for John Horseman, owner of the financial advisory firm JM Horseman Group, LLC. Beckham allegedly induced Horseman to participate in a tax-loss scheme designed to offset Horseman's own taxes. As part of this scheme, Horseman signed subscription agreements giving him $3,300,000 of common stock in Arbor Homes, Inc. and $3,000,000 of equity in SNB Consulting, LLC. Horseman initially paid roughly $80,000 in cash and executed over $6 million in promissory notes pursuant to the subscription agreements. In return, Horseman claimed losses sustained by these businesses on his individual and corporate tax returns. Horseman eventually made around $240,000 in payments on these notes, but made the payments to an entity Beckham controlled rather than to Arbor Homes or SNB Consulting.

Horseman's 2009 and 2010 individual returns claimed "nonpassive" losses from Arbor Homes that totaled $4.3 million. Taxpayers prefer to claim nonpassive losses because they may offset ordinary income, while passive losses may only offset passive income. However, in order to claim nonpassive losses, a taxpayer must have a sufficient economic investment in a business entity, and the taxpayer must also materially participate in the entity's activities. See 26 U.S.C. §§ 469(c), 1366(d); 26 C.F.R. § 1.469-5T. Horseman did not work for or otherwise materially participate in Arbor Homes during this time period. In addition, the Horseman Group's 2010 corporate tax return—also prepared by Beckham—claimed $1.8 million in

---

[1]The Honorable Ronnie L. White, United States District Judge for the Eastern District of Missouri.

partnership losses from SNB Consulting.  However, this loss exceeded the Horseman Group's basis in SNB Consulting.

In 2011, the IRS began a civil audit of Horseman's 2009 individual tax return, later expanding that audit to include the 2010 individual and corporate returns. Beckham provided the IRS agents assigned to the audit with completed forms authorizing him to act as Horseman's representative, representing that he was a currently-licensed CPA in Missouri.  In reality, Beckham was not licensed as a CPA, which would have precluded him from serving as Horseman's representative.

In the course of the audit, IRS Revenue Agent Anthony Grinstead requested information regarding Horseman's participation in Arbor Homes.  Agent Grinstead requested this information in order to verify that Horseman met the "material participation" requirement to claim Arbor Homes' losses as nonpassive losses.  In response to this request, Beckham provided Agent Grimstead with Horseman's 2009 day planner, which contained falsified entries purportedly showing that Horseman had worked several hundred hours for Arbor Homes during 2009.

The IRS continued to request additional documents, many of which Beckham never provided or admitted did not exist.  On July 23, 2012, the IRS discovered Beckham was not a licensed CPA.  Beckham told the agents conducting the investigation that his license had lapsed and he was in the process of getting it renewed.  In reality, Beckham's license had been revoked in 2008, following a 2006 federal conviction for mail fraud.  See Gov't Mot. Determ. Admissibility Evid. 2, Dist. Ct. Dkt. 92.

On April 3, 2013, the IRS discovered that Horseman "did not pay Arbor Homes 3 million dollars . . . [and] had not paid any money on the loan."  Evid. Hr'g Tr. 68, Dist. Ct. Dkt. 51.  This indicated that the deal between Horseman and Arbor Homes was a sham, and that Horseman had overstated his economic interest in Arbor Homes

and had improperly claimed Arbor Homes' losses on his individual tax returns. Suspecting fraud, IRS Revenue Agent John Shake referred the case to IRS criminal investigation. While the initial referral was for criminal investigation of Horseman, the IRS later added Beckham as a target. In June 2013, Beckham admitted to IRS Special Agent Patric Murray that the nonpassive losses Horseman claimed from Arbor Homes were actually passive losses because Horseman was not sufficiently involved in Arbor Homes.

Beckham was charged in a superseding indictment with one count of corruptly endeavoring to obstruct the due administration of the internal revenue laws in violation of 26 U.S.C. § 7212(a) and three counts of willfully assisting in the preparation of false tax returns in violation of 26 U.S.C. § 7206(2). He filed a pretrial motion to suppress all evidence the IRS gathered after July 23, 2012, claiming that after that date the IRS impermissibly conducted a criminal investigation under the guise of a civil audit. The district court denied Beckham's motion.

On June 27, 2017, the Supreme Court granted certiorari in United States v. Marinello, 839 F.3d 209 (2d Cir. 2016), cert. granted 137 S. Ct. 2327 (2017), to resolve a circuit split over whether § 7212(a) requires a defendant to know about a pending IRS proceeding when he engages in purportedly obstructive conduct. Beckham filed a motion to stay his trial pending the Supreme Court's decision. The district court denied Beckham's motion, agreeing with the government that the issue could be addressed through the use of a special verdict form that asked the jury whether Beckham committed a corrupt act after becoming aware of the audit and, if so, what that act was. Beckham also filed a motion in limine to exclude the proposed expert testimony of IRS Revenue Agent Sarah Parman regarding Parman's opinion that the losses claimed on Horseman's tax returns were improper. The district court denied that motion as well.

-4-

Horseman testified at trial. During his testimony, the prosecution asked Horseman whether he had ever stopped making payments to Beckham pursuant to the subscription agreements. Horseman responded that he eventually stopped making such payments because a tax attorney told him the deal was "fraudulent." Beckham moved for a mistrial based on this statement. The district court denied the motion, but offered to give a curative instruction instead. Beckham declined the offer.

At the instruction conference, Beckham objected to Jury Instruction 9—the instruction on the § 7212(a) offense—because it did not require the jury to find that he knew about the IRS audit at the time that he committed a corrupt act. He also argued that the special verdict form—which directed the jurors, if they found Beckham guilty of that offense, to indicate whether Beckham committed "at least one corrupt act after becoming aware of the existence of an Internal Revenue Service audit or proceeding[,]" see Proposed Jury Instructions 25, Dist. Ct. Dkt. 96, and, if so, to identify which corrupt act they unanimously agreed Beckham committed after learning of the proceeding—did not cure the faulty instruction. Beckham did not, however, specifically object to the language of the special verdict form. The district court overruled his objection.

The jury acquitted Beckham of the three § 7206(2) charges, but found him guilty of violating § 7212(a). On the special verdict form, the jury indicated that it found Beckham committed at least one corrupt act after learning of the audit and that it unanimously agreed Beckham committed the acts alleged in paragraph 10 of the Superseding Indictment—submitting Horseman's day planner to the IRS—after learning of the audit. Beckham filed a motion for judgment of acquittal or, in the alternative, for a new trial, which the district court denied. The district court sentenced Beckham to 36 months imprisonment and Beckham appealed.

II.

Six months after Beckham's trial, the Supreme Court decided Marinello v. United States, 138 S. Ct. 1101 (2018). The Court held that, for a § 7212(a) offense, "the Government must show . . . that there is a 'nexus' between the defendant's conduct and a particular administrative proceeding[.]" Marinello, 138 S. Ct. at 1109. Further, that proceeding must be "reasonably foreseeable by the defendant" at the time he acted. Id. at 1110. Because "[i]t is not enough for the Government to claim that the defendant knew the IRS may catch on to his unlawful scheme eventually[,]" if the proceeding is currently pending, the defendant must be aware of that proceeding. Id.

Before Marinello, this Court required three elements for a § 7212(a) offense: "(1) in any way corruptly (2) endeavoring (3) to obstruct or impede the due administration of the Internal Revenue Code." United States v. Williams, 644 F.2d 696, 699 (8th Cir. 1981), superseded by statute on other grounds, Tax Reform Act of 1984, Pub. L. No. 98-369, § 159, 98 Stat. 494, 696, as recognized in United States v. Brooks, 174 F.3d 950, 956 (8th Cir. 1999). Marinello thus added two elements—a nexus and knowledge of a currently-pending or reasonably foreseeable proceeding—that this Court did not previously require. Beckham argues on appeal that the district court erroneously instructed the jury on the § 7212(a) offense by failing to include these two elements. The government concedes on appeal that, post-Marinello, Jury Instruction 9 is erroneous. However, the government contends that the district court cured the instructional error through the use of a special verdict form and that, even if the special verdict form did not cure the error, the error was harmless.

We apply "harmless error analysis . . . to issues of instructional error," including "omitting an element altogether." United States v. Dvorak, 617 F.3d 1017, 1024-25 (8th Cir. 2010) (citation omitted). An instructional error is harmless beyond

a reasonable doubt if the evidence supporting the jury's verdict is so overwhelming that no rational jury could find otherwise. Neder v. United States, 527 U.S. 1, 18-19 (1999) (stating that an error is harmless if "the court can[] conclude beyond a reasonable doubt that the jury verdict would have been the same absent the error"); see also United States v. Inman, 558 F.3d 742, 750-51 (8th Cir. 2009) (finding evidence sufficient to support conviction despite failure to submit an element of the offense to the jury when the government presented uncontroverted testimony on the disputed element). Whether the instructional error here was harmless hinges on whether overwhelming evidence supports finding (1) that there was a nexus—in either time, causation, or logic—between Beckham's actions and the IRS audit; and (2) that Beckham knew or should have known about the audit when he committed some corrupt act. See Marinello, 138 S. Ct. at 1109-10.

We first address Marinello's nexus requirement. Marinello requires the prosecution to prove that a defendant's actions had "a relationship in time, causation, or logic with [a pending IRS] proceeding." Id. at 1109 (internal quotation marks omitted). The government relies on a specific action to prove the nexus requirement—Beckham providing the IRS with Horseman's falsified day planner. Because the IRS indisputably obtained the day planner as a functional part of the audit during the audit, if Beckham provided the IRS with the planner, that would be an act that has a nexus in time, causation, and logic to the pending IRS audit.

At trial, Agent Grinstead testified that he received Horseman's planner from Beckham at an in-person meeting on January 19, 2012, while conducting the audit. 3 Trial Tr. 103, Dist. Ct. Dkt. 167. Beckham never contradicted this testimony, arguing only that he acted as Horseman's representative in his contacts with the IRS. See 3 Trial Tr. 103, 144-45, Dist. Ct. Dkt. 167. Because, then, the government presented uncontroverted evidence that Beckham gave Agent Grinstead the day planner—evidence that Beckham did not attempt to dispute, see Inman, 558 F.3d at 750 (finding testimony constituted overwhelming evidence when the defendant "did

not question the credibility or accuracy of [the] testimony")—no rational juror could find that Beckham did not give the day planner to the IRS. See id. ("We have no doubt that any rational jury would have concluded that the government proved the [disputed element], for the record contains no evidence that could rationally lead to a contrary finding."). We therefore find the jury instruction error harmless as to the nexus requirement.

In addition to the nexus requirement, Marinello requires a defendant to act with knowledge or a reason to know of a pending or imminent IRS proceeding, such as an IRS audit. Marinello, 138 S. Ct. at 1104. We find that the evidence overwhelmingly shows Beckham knew of a currently-pending IRS audit at the time he gave Agent Grinstead Horseman's day planner. On December 1, 2011—over a month before his meeting with Agent Grinstead—Beckham undisputedly submitted falsified power of attorney forms allowing him to act as Horseman's representative throughout the audit. See 3 Trial Tr. 75, Dist. Ct. Dkt. 167. He then proceeded to actually act on Horseman's behalf during the audit. Significantly, Beckham provided Agent Grinstead with the planner in response to a request for information undisputably made *as part of the audit*. We therefore find that no rational jury could find Beckham was unaware of a pending IRS proceeding—the audit—at the time the IRS received the day planner.

Because we conclude that no rational jury could find reasonable doubt as to either of the two Marinello elements, we find that failure to instruct the jury on those elements was harmless. We thus need not determine whether the special verdict form properly cured the instructional error, and we decline to reverse Beckham's conviction on these grounds.

III.

Beckham appeals the district court's denial of his motion to exclude Agent Parman's expert testimony, arguing that the district court impermissibly allowed her to instruct the jury on what the law is. "We review the district court's decision to admit expert testimony for abuse of discretion, according it substantial deference." United States v. Bailey, 571 F.3d 791, 803 (8th Cir. 2009). "Improperly admitted testimony warrants reversal of a conviction if the testimony substantially influence[d] the jury's verdict." United States v. Merrell, 842 F.3d 577, 582 (8th Cir. 2016) (alteration in original) (internal quotation marks omitted).

Agent Parman testified that, in her opinion, Horseman improperly claimed the nonpassive losses on his tax returns because he did not materially participate in Arbor Homes—a key part of the government's case against Beckham on the § 7206(2) charges. As part of her testimony, she discussed statutory requirements and regulatory tests for whether a shareholder has materially participated in a business. Beckham alleges that her testimony was improper because she instructed the jury on (1) the economic substance doctrine; and (2) the law regarding material participation. Significantly, these two points relate only to the § 7206(2) charges against Beckham and do not relate whatsoever to the sole count of conviction—the § 7212(a) offense. Thus, even if Parman testified improperly, her testimony did not influence the jury because it acquitted Beckham of the charges about which she testified. See United States v. Shores, 700 F.3d 366, 374 (8th Cir. 2012) (finding that any error in admitting testimony was harmless when the jury acquitted the defendant of the charge to which the testimony related); United States v. Webb, 214 F.3d 962, 965 (8th Cir. 2000) (same). We therefore decline to reverse Beckham's conviction based on improper testimony, and we uphold the district court's denial of Beckham's motion to exclude.

IV.

Beckham next argues that the district court improperly denied his motion to suppress evidence that the IRS obtained after the civil audit morphed into a criminal investigation. Specifically, Beckham alleges that any evidence gathered after the IRS discovered he lacked a valid CPA license was inadmissible because, at that point, the IRS began investigating him for criminal activity while maintaining that it was merely conducting a civil audit of Horseman. We review facts underlying denial of a motion to suppress for clear error, and we apply de novo review to any "legal conclusions based upon those facts." United States v. Wadena, 152 F.3d 831, 851 (8th Cir. 1998).

"[T]he IRS may not develop a criminal investigation under the auspices of a civil audit." United States v. Grunewald, 987 F.2d 531, 534 (8th Cir. 1993). In order to succeed on a motion to suppress evidence obtained through a criminal investigation disguised as a civil audit, a defendant must show that "1) the IRS had firm indications of fraud by the defendant, 2) there is clear and convincing evidence that the IRS affirmatively and intentionally misled the defendant, and 3) the IRS's conduct resulted in prejudice to defendant's constitutional rights." Id. Here, Beckham seeks to suppress all evidence he provided to the IRS after July 23, 2012—the date the IRS discovered Beckham was not a licensed CPA.[2]

Firm indications of fraud are different than initial indications or suspicions. Wadena, 152 F.3d at 851. Whether the IRS had firm indications of fraud is a question of fact. Id. Here, the district court found that the IRS had only "a mere suspicion of fraud" until it discovered that a loan on Horseman's tax returns was a sham.

---

[2]Neither party has raised the issue of whether Beckham could credibly be considered a target of the audit—which focused on Horseman and the Horseman Group—or discussed whether Beckham must be considered a target of the audit for Grunewald to apply. We therefore decline to address these questions and assume that Grunewald's framework applies.

Beckham points to nothing that indicates this factual finding is clearly erroneous. He presented the IRS with a plausible explanation for his license expiration when asked why he had no CPA license. At most, the IRS merely suspected the case *might* involve fraud until it discovered the sham loan, at which point it suspended the civil audit. Thus, we find no clear error in the district court's determination that the IRS developed firm indications of fraud on April 3, 2013—the date it discovered the sham loan.

Affirmative and intentional misleading requires something more than the IRS failing to tell the defendant that "information developed in an audit may result in a further criminal investigation . . . ." Grunewald, 987 F.2d at 534. To affirmatively and intentionally deceive a defendant by disguising a criminal investigation as a civil audit, the IRS must utilize the audit "with the express purpose of obtaining records for the criminal investigation." Wadena, 152 F.3d at 852. This Court has found no Grunewald violation when a civil auditor failed to inform defendants about a simultaneous criminal investigation conducted by a different IRS agent. Here, despite preliminary consultations with an IRS Fraud Technical Advisor, the auditing agents did not involve IRS Criminal Investigation in the case until after they suspended the civil audit. We thus find no clear error in the district court's determination that the IRS did not affirmatively and intentionally mislead Beckham.

We also agree with the district court that the IRS's conduct in its audit of Horseman's individual and corporate tax returns did not violate Beckham's constitutional rights. Beckham moved to suppress all evidence gathered after July 23, 2012. However, the only count of conviction hinged on evidence provided to the IRS in January 2012—six months before that cutoff date. Because the IRS collected this evidence before the date Beckham alleges a criminal investigation began, Beckham cannot claim that it was the fruit of that investigation. We thus find no clear error in the district court's determination that the IRS's conduct did not result in prejudice to Beckham's constitutional rights.

Finding no error in the district court's analysis of the relevant factors, we find no error in the district court's denial of Beckham's motion to suppress. We affirm the district court's ruling.

V.

Finally, Beckham argues that the district court erred in denying his motion for a mistrial based on improper statements Horseman made while testifying. We review a district court's denial of a motion for a mistrial based on improper witness statements for an abuse of discretion. United States v. Branch, 591 F.3d 602, 607 (8th Cir. 2009).

A mistrial is a drastic remedy for jury exposure to improper witness statements—a remedy which we disfavor. United States v. Sherman, 440 F.3d 982, 987 (8th Cir. 2006). This Court considers five factors in determining whether a motion for a mistrial based on improper witness statements should be granted: "(1) whether the remark was unsolicited; (2) whether the government's line of questioning was reasonable; (3) whether a limiting instruction was immediate, clear, and forceful; (4) whether any bad faith was evidenced by the government; and (5) whether the remark was only a small part of the evidence against the defendant." Branch, 591 F.3d at 608 (citing United States v. Caver, 470 F.3d 220, 243 (6th Cir. 2006).

Beckham moved for a mistrial based on Horseman's statement that Beckham's actions constituted fraud, an element of the § 7206(2) charges. Applying the Branch factors here, we find no abuse of discretion in the district court's decision to deny Beckham's motion. The government asked Horseman if he ever stopped paying Beckham pursuant to the subscription agreements. Horseman responded that he continued making payments until he "spoke with a tax attorney who informed [him] that this whole deal was fraudulent . . . ." 2 Trial Tr. 106-07, Dist. Ct. Dkt. 166. His statement as to fraud did not directly respond to the question and was therefore

-12-

unsolicited.  See Branch, 591 F.3d at 608.  The government's line of questioning directly related to the charges against Beckham.  While the district court did not give a curative instruction, it failed to do so because Beckham refused such an instruction.  See United States v. Peyton, 108 F.3d 876, 878 (8th Cir. 1997) (upholding denial of a motion for a mistrial when the district court offered a curative instruction and the defendant refused it).  The jury clearly disregarded Horseman's statement that the "deal was fraudulent" because it acquitted Beckham of the charges with fraud as an element—the § 7206(2) charges.  Moreover, whether Beckham convinced Horseman to enter into a fraudulent transaction is irrelevant to the sole count of conviction—obstructing and impeding administration of the internal revenue laws—because fraud is not a requirement for that offense.  See 26 U.S.C. § 7212(a).  We therefore uphold the district court's denial of Beckham's motion for a mistrial.

We affirm the district court's judgment.

_____