**10-1985-cr**
**United States v. Litwok**

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

August Term, 2011

(Argued: August 30, 2011     Final Submission: September 7, 2011     Decided:April 30, 2012)

Docket No. 10-1985-cr

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -X

UNITED STATES OF AMERICA,

Appellee,

v.

EVELYN LITWOK,

Defendant-Appellant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - X

Before: LIVINGSTON and LOHIER, Circuit Judges, and KOELTL, District Judge.*

Evelyn Litwok appeals from a judgment of conviction entered in the United States District Court for the Eastern District of New York (Wexler, J.), after a jury found her guilty of one count of mail fraud and three counts of tax evasion for calendar years 1995 through 1997. On appeal, Litwok contends that the trial evidence was insufficient to support her convictions and that the mail fraud and the tax evasion counts were improperly joined. We agree with Litwok on the sufficiency challenges relating to the tax evasion counts for 1996 and 1997 and reverse her convictions on those counts. We vacate Litwok's convictions for mail fraud and tax evasion for 1995 on the ground that those counts were improperly joined, and we remand the case to the District Court for further proceedings.

---

* Judge John G. Koeltl of the United States District Court for the Southern District of New York, sitting by designation.

MARK M. BAKER, Brafman & Associates, P.C., New York, NY, for Defendant-Appellant.

BURTON T. RYAN, JR., Peter A. Norling (on the brief), for Loretta E. Lynch, United States Attorney, Eastern District of New York, for Appellee.

LOHIER, Circuit Judge:

Evelyn Litwok appeals from a judgment of conviction entered after a jury trial in the United States District Court for the Eastern District of New York (Wexler, J.), at which she was found guilty of one count of mail fraud and three counts of tax evasion relating to calendar years 1995 through 1997. She challenges the sufficiency of the evidence underlying all four convictions as well as the joinder of the mail fraud and tax evasion counts. With respect to the two counts of tax evasion for the years 1996 and 1997, we reverse for insufficient evidence. We vacate her convictions on the remaining two counts of mail fraud and tax evasion for 1995 because those counts, while supported by sufficient evidence, were improperly joined.

**BACKGROUND**

Because this is an appeal from a judgment of conviction entered after a jury trial, the following facts are drawn from the trial evidence and described in the light most favorable to the Government. United States v. Bahel, 662 F.3d 610, 617 (2d Cir. 2011).

1. Mail Fraud

A superseding indictment (the "Indictment") charged Litwok with mail fraud in connection with a false insurance claim relating to her house on Duke Drive in East Hampton, New York. At trial, however, the Government presented evidence relating to both Litwok's house on Duke Drive, where Litwok, a stockbroker, lived and operated her businesses, and a nearby house she owned on Aborigine Way. Litwok eventually transferred nominal ownership

of both houses to her close friend, Dalia Eilat, under whose name the homes were insured by a subsidiary of Chubb Insurance Company ("Chubb").

In 1996, in relatively quick succession, Chubb received two noticeably similar insurance claims, purporting to be signed by Eilat, for each of the East Hampton homes. First, in October 1996, Chubb received a claim for repairs after the house on Aborigine Way supposedly sustained heavy storm damage, including destroyed patio furniture (the "Aborigine Way claim"). Chubb eventually settled this claim for about $66,000. Second, in November 1996, Chubb received an insurance claim for water damage from a broken bathroom pipe in the Duke Drive home (the "Duke Drive claim"). Chubb initially paid approximately $22,000 to settle the Duke Drive claim.

In March 1997, as part of the Duke Drive claim, Chubb received a receipt for lodging expenses for several nights that Litwok and Eilat purportedly spent at a guesthouse while the Duke Drive house was being repaired. The guesthouse receipt was issued to Litwok and Eilat, signed by Ruth Vered, and faxed by "Janet Lehr Inc." In April 1997, Chubb mailed another check for $2,186.44 for the lodging expenses (the "Lodging Check"). Although the Lodging Check, which is the subject of the mail fraud count, was made payable to Eilat, it was deposited in an account jointly held by Litwok and Adrienne Moore, an unlicensed public adjuster who had assisted with filing the insurance claims and had endorsed the check. There was evidence to suggest that Litwok was aware of the deposit into the joint account. For example, Litwok's former assistant, Elizabeth Kratochvil, testified that Litwok meticulously supervised all the financial transactions from her personal and corporate bank accounts and personally reviewed the bank statements for her joint account with Moore.

3

There was also evidence that both insurance claims were fraudulent. Both claims included inflated estimates of damage from Litwok's home contractor, who testified that he did not prepare these estimates, and declared water damage requiring repair or replacement of hardwood floors that, Chubb later discovered, were largely intact. The Property Loss Notice forms accompanying both claims listed Litwok, not Eilat, as the contact person. Furthermore, in mid-1997 Eilat notified Chubb that Litwok and Moore had forged Eilat's signature on the Property Loss Notice forms for both insurance claims and deposited the settlement checks into their joint account after forging her signature on the back of the checks. Eilat's allegations prompted a United States Postal Inspector to investigate the claims. The Inspector visited the Duke Drive home and encountered Litwok with the allegedly damaged patio furniture from Aborigine Way intact. During the encounter, Litwok told the Inspector, "[D]on't take my furniture back." The Inspector also determined that there was no guesthouse at the address that appeared on the guesthouse receipt and concluded that the receipt was false.

As part of his investigation, the Inspector enlisted the help of Janet Lehr, whose name appeared on the fax line of the false receipt, to record a telephone call with Litwok discussing the receipt and the fact that Lehr had been visited by a federal agent. The recorded call was played to the jurors, and a transcript was provided to them. During the call with Lehr, Litwok did not dispute the fraudulent nature of the Duke Drive claim. To the contrary, her statements suggested that she was aware of both the details of the false receipt and its incriminating nature. For example, after Lehr expressed remorse over her involvement in the scheme, Litwok offered to "un-create the problem" for Lehr by blaming Moore.

4

## 2. Tax evasion

In addition to the evidence of mail fraud, the Government presented the following evidence relating to the tax evasion counts. From 1994 to 1997, Litwok operated a number of private equity companies from her Duke Drive house, including Kohn Investment I LP, which she managed through Kohn Investment Management, Inc. Litwok routinely commingled her corporate and personal funds and used funds she received from her corporate investors to pay for personal expenses and gifts. Although she owed nearly $1.5 million in taxes from 1995 through 1997 based on her personal income, Litwok failed to file a single personal tax return for those years.

Three of Litwok's former accountants testified at trial. But only one accountant, Peter Testaverde, testified about work related to any of the years relevant to the tax evasion charges, namely, 1995, the year referenced in Count Two of the Indictment. Testaverde explained that Litwok had retained his accounting firm from September 1995 to September 1996 to calculate the losses and income for Kohn Investment I LP and to prepare 1995 K-1 tax forms, which provide investors with information necessary to file their own tax returns, including their portion of the partnership income. Testaverde confronted Litwok after discovering over $2.3 million in excess personal compensation based on a review of various brokerage account statements, among other documents. In response, Litwok attacked the accuracy of the account statements from her company's brokerage firm that Testaverde had relied on to calculate her compensation. She then blocked Testaverde from contacting the brokerage firm to verify the information, as would have been the normal practice. When Testaverde tried to notify her company's partners that he could not prepare their K-1 forms because Litwok had prohibited him from contacting the

5

brokerage firm, Litwok attempted to prevent him from doing so.  One of Litwok's two other accountants testified that his firm prepared Litwok's tax returns for 1992 and 1993, prior to the period charged in the Indictment, but she never filed them.  One of these accountants, Lawrence Goldstein, also confronted Litwok, to no effect, about what appeared to be $1 million in excess personal compensation, and refused her repeated demands to adjust his accounting for her 1994 partnership tax return.

In March 2003 Litwok was charged in the Indictment with mail fraud relating to the Duke Drive lodging reimbursement claim and tax evasion for the years 1995 through 1997.  The case was tried before a jury in February 2009.  At trial, the District Court admitted evidence of Litwok's failure to file taxes prior to 1995 under Federal Rule of Evidence 404(b) and instructed the jury that it could consider that evidence solely to determine Litwok's intent.  In May 2010, after the jury convicted Litwok on all counts, the District Court sentenced her principally to two years' imprisonment and ordered her to pay $23,551 in restitution.  She began serving her sentence in September 2010.  By order dated September 8, 2011, we released Litwok on bail pending the disposition of this appeal, after noting that the parties had "agreed that the appeal presents 'a close question or one that very well could be decided the other way.'"

**DISCUSSION**

1.  Sufficiency of the Evidence

A defendant who challenges the sufficiency of the evidence after a conviction "bears a heavy burden," United States v. Desnoyers, 637 F.3d 105, 109 (2d Cir. 2011) (quotation marks omitted), and we "'view[] the evidence in the light most favorable to the prosecution,'" United States v. Heras, 609 F.3d 101, 105 (2d Cir. 2010) (quoting Jackson v. Virginia, 443 U.S. 307,

6

319 (1979)). Using this "exceedingly deferential" standard, United States v. Hassan, 578 F.3d 108, 126 (2d Cir. 2008), we will affirm the conviction if "any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt," Heras, 609 F.3d at 105 (emphasis in the original) (quotation mark omitted).

a. The Mail Fraud Conviction

On appeal, Litwok contends that the evidence was insufficient to sustain a guilty verdict of aiding and abetting mail fraud because she neither "consciously assisted" nor "directly facilitated or encouraged" the fraud related to the Duke Drive lodging reimbursement claim, which was the only fraud charged in the Indictment. See United States v. Medina, 32 F.3d 40, 45 (2d Cir. 1994). We disagree. The aiding and abetting statute requires only "that 'the underlying crime was committed by someone other than the defendant and that the defendant [her]self either acted or failed to act with the specific intent of advancing the commission of the underlying crime.'" United States v. Smith, 198 F.3d 377, 383 (2d Cir. 1999) (quoting United States v. Pipola, 83 F.3d 556, 562 (2d Cir. 1996)); see 18 U.S.C. § 2. With respect to the underlying mail fraud, the Government had to prove three elements: "(1) a scheme to defraud, (2) money or property as the object of the scheme, and (3) use of the mails . . . to further the scheme." United States v. Shellef, 507 F.3d 82, 107 (2d Cir. 2007) (quotation mark omitted). The Government carried this burden.

At trial, there was no dispute that the lodging reimbursement claim submitted to Chubb as part of the Duke Drive claim was fraudulent. The only real issue was whether Litwok

7

intentionally assisted that fraud.[1]  "The law is well established that the government may secure conviction based solely on circumstantial evidence, provided it is sufficient to prove the elements of the charged crime beyond a reasonable doubt."  United States v. Abu-Jihaad, 630 F.3d 102, 135 (2d Cir. 2010), cert. denied, 131 S. Ct. 3062 (2011).  The primary evidence of Litwok's intent was the false receipt submitted for additional living expenses at the guesthouse.  Although the evidence was hardly overwhelming, we conclude that a rational trier of fact could find that Litwok helped to obtain the false receipt based on the following: (1) the Duke Drive claim form listed Litwok as the contact person, and Litwok contacted Chubb to discuss the claim; (2) Litwok's name appeared on the false receipt; (3) the fraud proceeds were deposited into an account that Litwok jointly controlled; (4) there was no evidence that Eilat, whose name also appeared on the receipt, procured the receipt or benefited from the insurance claim; and (5) Eilat alleged that Litwok had forged her signature on the Duke Drive and Aborigine Way claims and the settlement checks.

In addition, the transcript of the recorded conversation between Litwok and Lehr suggests that Litwok was aware of the receipt at the time it was procured and submitted.  The transcript also indicates that Litwok was aware of certain details of the false insurance claim relating to the stay at the guesthouse, and knew where the fraud proceeds were deposited.  The jury was entitled to infer from this evidence that Litwok's knowledge of these facts was due to her involvement in the scheme to defraud Chubb.

---

[1]  The Government never clearly identified whom Litwok aided and abetted in this fraud. See United States v. Perry, 643 F.2d 38, 45 (2d Cir. 1981) ("To show a violation of 18 U.S.C. § 2 it is not necessary to identify any principal at all, provided the proof shows that the underlying crime was committed by someone.").

8

The transcript also documents Litwok's attempts to explain the suspicious circumstances surrounding the fraudulent receipt and cover up the fraud. Litwok's efforts to cover up the fraud against Chubb constitute only evidence of consciousness of guilt and, without more, such evidence is "'insufficient proof on which to convict where other evidence of guilt is weak and the evidence before the court is as hospitable to an interpretation consistent with the defendant's innocence as it is to the Government's theory of guilt.'" United States v. Ogando, 547 F.3d 102, 109 (2d Cir. 2008) (quoting United States v. Johnson, 513 F.2d 819, 824 (2d Cir. 1975)).

Taken together, however, all of the evidence marshaled at trial, including the other portions of the transcript unrelated to Litwok's attempt to cover up the fraud, sufficed to show that Litwok alone was in a position both to help procure the false receipt and benefit from the proceeds of the fraud, that she intended to assist in the fraud, and that she was aware that her conduct was unlawful.

Pointing to the lack of evidence that she signed any of the Chubb settlement checks, Litwok asserts that there was no evidence that she shared in the proceeds of the fraud. But the Postal Inspector testified that funds from her joint account were used to purchase artwork sent to Litwok from a gallery owned by Ruth Vered – the name that appeared on the guesthouse receipt. Moreover, in Litwok's taped conversation with Lehr, Litwok herself implicitly attests both to the connection between the artwork and the money in her joint account and to her knowledge that the account contained fraudulently obtained funds by assuring Lehr that Litwok was "not going to testify to art work or a check, or anything." The Inspector's testimony and that of Litwok's former assistant, Ms. Kratochvil, reinforced the Government's argument that Litwok controlled the joint account and was thus aware of, and benefited from, the fraudulent transaction related to the lodging reimbursement.

9

At trial, Litwok also argued that Eilat had defrauded Chubb and had framed Litwok. But the jury was entitled to weigh the evidence and reject that contention. See United States v. Torres, 604 F.3d 58, 67 (2d Cir. 2010) ("[W]e defer to a jury's assessments with respect to credibility and conflicting testimony, and to its choice between the competing inferences that can be drawn from the evidence . . . ."). The jury was presented with evidence relating to the Aborigine Way claim, which was admitted without objection from Litwok,[2] and from which the jury could have inferred that Litwok was personally involved in a larger fraudulent scheme that included the false lodging reimbursement claim. For example, the Postal Inspector testified that, when he visited the Duke Drive home and found the patio furniture that had been purportedly damaged at the Aborigine Way house, Litwok asked him not to confiscate her furniture. Similarly, both the Duke Drive and the Aborigine Way claims included false estimates of damages from Litwok's home contractor. Both claims also reported the same type of damage requiring the same type of repairs – specifically, water damage requiring repair or replacement of hardwood floors.

From all of this evidence the jury could infer that Litwok was involved in a fraudulent scheme that included the submission of the Aborigine Way claim, the Duke Drive claim, and, in particular, the Duke Drive lodging reimbursement claim charged in the Indictment. Evaluating the "evidence 'not in isolation but in conjunction,'" we conclude that there was sufficient evidence to sustain the mail fraud conviction. Id.

---

[2] Litwok contends on appeal that the admission of this evidence was error. She failed to object to it at trial, however, and it was not plain error for the District Court to admit it as direct evidence of Litwok's involvement in the fraud or as necessary background.

b.  The Tax Evasion Convictions

With respect to the tax evasion counts of conviction under 26 U.S.C. § 7201, the Government was required to prove three elements at trial: "(1) the existence of a substantial tax debt, (2) willfulness of the nonpayment, and (3) an affirmative act by the defendant, performed with intent to evade or defeat the calculation or payment of the tax." United States v. Josephberg, 562 F.3d 478, 488 (2d Cir. 2009).  Litwok contends that, at most, the evidence indicated that she failed to file her returns, which does not satisfy the third element requiring some affirmative act.  While we agree that failing to file a tax return does not by itself constitute an affirmative act, United States v. Romano, 938 F.2d 1569, 1573 (2d Cir. 1991), we conclude that there was sufficient proof that Litwok engaged in an affirmative act to evade taxes in 1995. By contrast, we conclude that there was insufficient evidence of any such act relating to the calendar years 1996 and 1997.

(i)  1995 Tax Count

We have previously described as examples of affirmative acts conduct such as making false statements to the IRS for the purpose of evading taxes, United States v. Klausner, 80 F.3d 55, 62 (2d Cir. 1996), establishing accounts in the names of other entities to conceal income, Josephberg, 562 F.3d at 491, and "'handling of one's affairs to avoid making the records usual in transactions of the kind,'" id. (quoting Spies v. United States, 317 U.S. 492, 499 (1943)).  More broadly, we have held that "[a]n affirmative act includes 'any conduct, the likely effect of which would be to mislead or to conceal.'"  Klausner, 80 F.3d at 62 (quoting Spies, 317 U.S. at 499).

With these principles in mind, we review the evidence relating to the tax evasion count for 1995 (Count Two).  The most significant testimony relating to that count was that of Peter

11

Testaverde.  As set forth above, Testaverde testified that Litwok barred him from verifying the accuracy of the trading account statements that she claimed were inaccurate and thereby prevented him from preparing 1995 K-1 tax forms for Kohn Investment I LP's partners – including its general partner, Kohn Investment Management, which Litwok owned.  Without K-1 tax forms, the company's partners could not determine their income and file their returns.  Based on Testaverde's testimony, a rational juror could find that Litwok actively prevented the filing of her returns that year.  On a sufficiency challenge, her conduct constitutes an affirmative act sufficient to sustain her conviction on Count Two.

(ii)  1996 and 1997 Tax Counts

In contrast to the evidence relating to the calendar year 1995, there was no evidence at trial of any affirmative act beyond a mere failure to file tax returns for calendar years 1996 and 1997.  For the first time at oral argument on appeal, the Government sought to defend the convictions for tax evasion for 1996 and 1997 (Counts Three and Four) in two ways.  First, it claimed that Litwok had an affirmative, fiduciary duty to prepare K-1 tax forms for Kohn's partners, and that her failure to do so constituted the requisite affirmative acts.  Second, it argued that Litwok's refusal to allow Testaverde to verify financial documents for 1995 constituted an affirmative act of tax evasion in 1996 and 1997 because it prevented the calculation of accurate income for those later years.  Because it did not raise either of these arguments in its brief or before the District Court, these arguments were forfeited, and we decline to consider them.  See United States v. Cedeno, 644 F.3d 79, 83 n.3 (2d Cir.), cert. denied, 132 S. Ct. 325 (2011).  Accordingly, we reverse the judgment of conviction as to Counts Three and Four.

12

## 2. Joinder

Prior to trial, Litwok moved unsuccessfully to sever the mail fraud and tax evasion counts under Rule 8(a) of the Federal Rules of Criminal Procedure.[3] Although there was sufficient evidence to support Litwok's convictions for mail fraud and tax evasion for 1995, we nevertheless consider whether these counts were misjoined. We review the District Court's denial of a Rule 8(a) motion to sever counts de novo, United States v. Lee, 549 F.3d 84, 94 (2d Cir. 2008), and conduct a "twofold inquiry: whether joinder of the counts was proper, and if not, whether misjoinder was prejudicial to the defendant," United States v. Rivera, 546 F.3d 245, 253 (2d Cir. 2008) (quotation mark omitted). Under our case law:

> Tax counts may be joined with non-tax counts where it is shown that the tax offenses arose directly from the other offenses charged. The most direct link possible between non-tax crimes and tax fraud is that funds derived from non-tax violations either are or produce the unreported income. Thus, if a defendant is charged with fraud, the government may prosecute the defendant for fraud and for not paying taxes on the profits produced by the alleged fraud jointly.

Shellef, 507 F.3d at 98 (citations and quotation marks omitted).

### a. Misjoinder of Counts One and Two

Our review of the record shows that at trial there was no link, let alone a direct one, between the fraudulent insurance claim underlying the mail fraud count (Count One) and the unreported income underlying Count Two. The absence of a connection between the mail fraud

---

[3] Rule 8(a) provides in relevant part:

> The indictment or information may charge a defendant in separate counts with 2 or more offenses if the offenses charged . . . are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan.

Fed. R. Crim. P. 8(a).

13

and tax count here is more pronounced than the situation we confronted in Shellef, a case in which we reversed a district court's denial of a motion to sever tax counts from counts of wire fraud, money laundering and conspiracy. In concluding that severance was necessary, we observed that the tax violation "took place before the conspiracy and wire fraud allegedly began," even though the businesses involved in the tax violation were also later used to perpetrate the non-tax crimes. Id. at 99. We explained that "the fact that the businesses that produced the . . . unreported income were also subsequently used to perpetrate the alleged conspiracy and wire fraud does not justify a conclusion that the offenses charged [satisfied] Rule 8(a)." Id. Here, by contrast, there was no evidentiary overlap between the alleged tax violation involving Litwok and her investment companies in 1995 and the fraudulent home insurance claim submitted in 1997. See United States v. Page, 657 F.3d 126, 130 (2d Cir. 2011), cert. denied, 132 S. Ct. 1041 (2012); United States v. Halper, 590 F.2d 422, 429 (2d Cir. 1978).

b. Prejudice Resulting from Misjoinder

"Erroneous joinder 'requires reversal only if the misjoinder result[ed] in actual prejudice because it had substantial and injurious effect or influence in determining the jury's verdict.'" Shellef, 507 F.3d at 100 (quoting United States v. Lane, 474 U.S. 438, 449 (1986)). To determine whether there was actual prejudice, "we inquire whether 'evidence tending to prove the charge that should have been severed would nevertheless have been admissible . . . , and was admitted subject to appropriate limiting instructions.'" Id. at 101. Because prejudice in this context is a "two-way street," we also consider whether joining the mail fraud count prejudiced the jury deliberations on the tax evasion count, and vice versa. Id. at 102.

The Government argues that the evidence of Litwok's failure to file tax returns for her investment companies and her improper personal use of business funds had virtually no impact

14

on the jury's consideration of the mail fraud count. We disagree. The evidence of the 1995 tax evasion charged in Count Two included testimony about Litwok defrauding her investors of millions of dollars for personal compensation. At trial and in its closing argument, the Government was able to point to that and other evidence to describe Litwok as "a cheat, a liar, and a thief" and to otherwise contend that Litwok had a propensity to engage in fraudulent activity. Because none of the evidence of the 1995 tax evasion was related to the 1997 mail fraud offense, it would not have been admitted in a trial involving only that offense; yet it inevitably colored the jury's view of Litwok's role in the mail fraud scheme. The prejudice, in our view, went both ways: although the evidence of Litwok's involvement in the fraud related to the Aborigine Way claim would have been inadmissible in a trial involving only the 1995 tax evasion count since it did not <u>support</u> that charge in any way, it surely affected the jury's consideration of that count.

Had the evidence against Litwok been overwhelming on both counts, or had the District Court admitted the tax evasion evidence and the mail fraud evidence with appropriate limiting instructions to the jury, we may well have reached a different conclusion and deemed the error harmless. <u>See</u> <u>id.</u> at 100-01 (citing <u>Lane</u>, 474 U.S. at 450). But the evidence was certainly not overwhelming, and the District Court gave no such limiting instructions.

In summary, the misjoinder of Counts One and Two prejudicially affected the jury's deliberations on each of these counts. We therefore vacate the judgment of conviction as to these counts and remand to the District Court for further proceedings. Having found the evidence insufficient to sustain Litwok's convictions of tax evasion for 1996 and 1997, we need not address her arguments that these offenses were also misjoined with Count One.

3. Additional Arguments

Because we vacate and remand for further proceedings as to Counts One and Two and on remand the parties may proceed to a retrial, we briefly address Litwok's argument that the District Court's jury instructions constituted plain error and affected her substantial rights. See United States v. Javino, 960 F.2d 1137, 1141 (2d Cir. 1992). We do so to help avoid the possible repetition of an error that occurred at trial. During the jury charge, the District Court correctly identified the third essential element of tax evasion under 26 U.S.C. § 7201, namely, that there must be "an affirmative act by the defendant, performed with intent to evade or defeat the calculation or payment of the tax." Josephberg, 562 F.3d at 488. However, it proceeded to explain the third element as follows:

> There are many different ways in which the tax may be evaded or an attempt made to evade a tax. Counts Two, Three, and Four allege that the defendant evaded or attempted to evade a tax by failing to file income tax returns for the years 1995, Count Two, 1996, Count Three, and 1997, Count Four.

As the Government acknowledges, the District Court's further elaboration of the third element was error because it enabled the jury to conclude that simply failing to file a return – without, for example, any attempt by Litwok to conceal her income – could constitute an affirmative act. Cf. 3 Leonard B. Sand et al., Modern Federal Jury Instructions-Criminal, ¶ 59.01, Instr. 59-7 (2011) (noting that, if applicable, the jury should be instructed "that the failure to file a tax return is not sufficient by itself to satisfy this [third] element. Instead, the government must prove beyond a reasonable doubt the act of evasion described in the indictment."). Because the jury instruction on tax evasion, viewed as a whole, was erroneous, the particular explanation regarding the third element should not be given again if Count Two is retried, and the jury should be properly instructed.

**CONCLUSION**

For the foregoing reasons, we REVERSE the judgment of conviction for tax evasion for the years 1996 and 1997 (Counts Three and Four), VACATE the judgment of conviction as to the counts of mail fraud and tax evasion for the year 1995 (Counts One and Two), and REMAND to the District Court for further proceedings consistent with this opinion.