19-912-cr
*United States v. Joseph Scali*

**UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT**

**<u>SUMMARY ORDER</u>**

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 8th day of July, two thousand twenty.

PRESENT:   GUIDO CALABRESI,
           DENNY CHIN,
           SUSAN L. CARNEY,
                  *Circuit Judges*.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

UNITED STATES OF AMERICA,
                  *Appellee*,

           -v-                                          19-912-cr

JOSEPH SCALI,

                  *Defendant-Appellant*.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -x

FOR APPELLEE:              OLGA I. ZVEROVICH, Assistant United States
                           Attorney (Vladislav Vainberg, Sarah K. Eddy,
                           Assistant United States Attorneys, *on the brief*),
                           *for* Audrey Strauss, United States Attorney for

the Southern District of New York, New York, New York.

FOR DEFENDANT-APPELLANT:   WALTER P. LOUGHLIN, New York, New York.

Appeal from the United States District Court for the Southern District of New York (Román, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED.**

Defendant-appellant Joseph Scali appeals from a judgment entered March 28, 2019, after a jury trial, convicting him of ten criminal offenses, including: mail fraud, structuring cash deposits, tax violations, obstruction of justice, and perjury. On March 6, 2019, the district court sentenced Scali principally to 84 months' imprisonment. We assume the parties' familiarity with the underlying facts, the procedural history of the case, and the issues on appeal.

Evidence at trial showed that Scali, while serving as the attorney for a client, assisted the client in entering a contract with Javid Sakhaee to sell land and mineral rights for $1.7 million. Although the contract provided that Sakhaee's down payment was to be preserved in an escrow account, Scali used the funds without authorization. In April 2011, the Sakhaees provided approximately $1.5 million to Scali to hold in escrow pending closing. Due to a failed title search, on or about October 20, 2011, at the request of Sakhaee's counsel, Scali returned half of Sakhaee's funds, and

2

agreed to retain the remaining $850,000 in escrow, pending a new contract. At that point, however, Scali had already spent approximately $523,000 of the money that was supposed to be held in escrow.

When the parties did not agree on a deal by May 2012, Sakhaee demanded Scali return the $850,000. Scali ignored these requests. By early May 2012, Scali transferred a portion of the remainder of Sakhaee's funds to his client, and spent the rest on personal luxuries, such as season sports tickets; an $8,100 fur coat; trips to Italy, England, and the Cayman Islands; wire transfers of thousands of dollars to his daughter in England; and mortgage payments for his rental property.

Evidence at trial showed that Scali failed to file personal tax returns from 2006 to 2012 and failed to file corporate tax returns for his law firm from 2007 to 2012. In January 2013, the Internal Revenue Service (the "IRS") asked Scali to submit copies of his tax returns from 2006 through 2011. Scali provided only his tax returns for 2006 and 2007, and falsely represented that they had been previously filed.

In November 2013, Scali asked the IRS to prepare his tax returns for 2010 through 2012 and provided "all information necessary " and "material for [the IRS's] use" to prepare his returns. Suppl. App'x at 733-34. Scali, however, failed to produce statements from his attorney escrow account. Further, over the course of 24 hours, Scali made four cash deposits totaling $32,400 into his escrow account. No deposit exceeded $10,000, so none triggered the currency transaction reports that are viewed by the IRS.

3

In November 2013, the Appellate Division of the Supreme Court of the State of New York for the Second Department suspended Scali from the practice of law in New York after he failed to cooperate in an investigation involving, *inter alia*, Sakhaee's complaint alleging that Scali failed to return his down payment (the "Suspension Order"). The United States District Court for the Southern District of New York ("SDNY") later disbarred Scali from practice for separate reasons. In a sworn affidavit to the SDNY, Scali stated that his suspension from the New York Bar "had nothing to do with [his] law practice." Suppl. App'x at 666. Despite the Suspension Order, Scali continued to practice law and accept fees from clients.

A superseding indictment was filed on August 30, 2017 charging Scali with ten counts: mail fraud by misappropriating $850,000 from his attorney escrow account (Count One); structuring cash deposits into his escrow account to evade currency transaction reporting requirements (Count Two); making false statements to an IRS officer (Counts Three and Four); corruptly endeavoring to obstruct and impede the due administration of the internal revenue laws (Count Five); tax evasion in 2011 and 2012 (Counts Six and Seven); obstruction of justice and perjury in connection with the misrepresentation to the SDNY investigators (Counts Eight and Nine); and mail fraud by defrauding his client after the Suspension Order was in effect (Count Ten). On October 9, 2017, Scali moved to sever Counts Two through Seven as improperly joined under Federal Rule of Criminal Procedure 8(a) and to dismiss the superseding

4

indictment. The district court denied the motion in both respects on January 9, 2018.

Trial commenced on January 29, 2018, and ended on March 1, 2018, when the jury

returned a guilty verdict on all counts. On March 6, 2019, the district court sentenced

Scali principally to 84 months' imprisonment. The district court also ordered Scali to

pay $1,511,534.73 in restitution. This appeal followed.

## *DISCUSSION*

On appeal, Scali challenges the joinder of charges under the superseding

indictment, several evidentiary rulings, the sufficiency of the evidence supporting his

convictions, and the jury instructions on the charge for obstruction of the due

administration of the internal revenue laws.

## I. *Joinder of Criminal Counts*

"We review the District Court's denial of a Rule 8(a) motion to sever

counts *de novo*." *United States v. Litwok*, 678 F.3d 208, 216 (2d Cir. 2012). This review

requires a "twofold inquiry: whether joinder of the counts was proper, and if not,

whether misjoinder was prejudicial to the defendant." *Id.* (quoting *United States v.*

*Rivera*, 546 F.3d 245, 253 (2d Cir. 2008)). Joinder under Rule 8(a) is proper if the offenses

"are of the same or similar character, or are based on the same act or transaction, or are

connected with or constitute parts of a common scheme or plan." Fed. R. Crim. P. 8(a).

Tax-related counts are properly "joined with non-tax counts where it is shown that the

tax offenses arose directly from the other offenses charged," such as if funds derived

5

from "non-tax violations . . . produce the unreported income." *Litwok*, 678 F.3d at 216

(citing *United States v. Shellef*, 507 F.3d 82, 98 (2d Cir. 2007)).

We find no error in joining all ten counts here. Counts Two through

Seven were properly joined because Count Five -- obstructing the due administration of

the internal revenue laws -- covers the tax-offenses charged in Counts Two through

Four, Six, and Seven. Indeed, evidence at trial showed that Scali concealed taxable

income, effectively obstructing the IRS, by structuring cash transactions to evade

currency reporting requirements (Count Two); making false statements to the IRS about

the filing status of his 2006, 2007, and 2009 tax returns (Counts Three and Four); and

failing to report taxable income received in 2011 and 2012 (Counts Six and Seven).

Thus, joinder of Counts Two through Seven was proper because they shared "sufficient

logical connection" to Scali's "common scheme" to obstruct and defraud the IRS. *United*

*States v. Ruiz*, 894 F.2d 501, 505 (2d Cir. 1990).[1]

---

[1] Scali concedes that Counts One, Six, and Seven were properly joined because Counts Six and Seven charged Scali with evading taxes on income that he realized from the mail fraud scheme charged in Count One. *See* Appellant's Br. at 5-6. Scali waived any claim of improper joinder for Counts Eight, Nine, and Ten because he failed to move for severance in the district court on these counts. *See* Fed. R. Crim. P. 12(b)(3)(B)(iv) (requiring that motions for improper joinder be raised pretrial); *see, e.g.*, *United States v. Blount*, 291 F.3d 201, 208 (2d Cir. 2002) (defendant waived appeal of severance argument by failing to raise it with the district court).

Even if we considered Scali's severance argument with respect to Counts Eight, Nine, and Ten, we conclude that joinder was proper because the obstruction and perjury charges stemmed from Scali's "common scheme" to avoid the internal revenue laws. *See Ruiz*, 894 F.2d at 505.

6

## II. *Evidentiary Rulings*

"A district court's evidentiary rulings are subject to review for abuse of discretion," *United States v. Curley*, 639 F.3d 50, 56 (2d Cir. 2011), and we will reverse only if an error affects a "substantial right," *United States v. Garcia*, 413 F.3d 201, 210 (2d Cir. 2005) (quoting Fed. R. Evid. 103(a)).  Before trial, the district court granted in part the government's motion *in limine* to admit: (1) Scali's uncharged federal and state tax history, as evidence of Scali's criminal intent and willfulness and (2) testimony relating to Scali's attorney disciplinary hearing, which would "allegedly show that the suspension did in fact have to do with [Scali's] law practice since the grievance complaints stemmed from various [clients'] complaints."  Dist. Ct. Dkt. 148 at 5.  Scali challenges the admission of both sets of evidence on appeal.

First, Scali argues that the district court violated Federal Rule of Evidence 404(b) by admitting the federal and state tax filings because the evidence only served to establish his propensity to commit the charged tax offenses.  We disagree.  This Court has explained that Rule 404(b) permits admission of a defendant's past taxpaying record as circumstantial evidence of willfulness to evade taxes in subsequent years.  *See United States v. Bok*, 156 F.3d 157, 166 (2d Cir. 1998) ("[F]ailure to file state or federal returns . . . until told to do so by the IRS is indicative of an intent to evade the tax system."); *see also United States v. Klausner*, 80 F.3d 55, 63 (2d Cir. 1996) ("Patterns of understating or failing to report income are . . . evidence of willfulness.").  Thus, the tax filings from uncharged

7

years were admissible as directly relevant to Scali's intent to evade taxes in the charged years.

Second, Scali challenges the district court's admission of testimony describing complaints received by the New York State Grievance Committee prior to Scali's suspension. We find no abuse of discretion here because this testimony was directly relevant to show that the Suspension Order did involve Scali's law practice, and therefore was highly probative in showing that Scali committed perjury and obstructed justice. Moreover, this testimony did not unfairly prejudice Scali because the complaints did not involve "conduct any more sensational or disturbing than the crimes" with which Scali was charged. *See United States v. Roldan-Zapata*, 916 F.2d 795, 804 (2d Cir. 1990). Finally, as to both evidentiary rulings, the district court provided the jury with adequate limiting instructions, curing any potential prejudice. *See United States v. Snype*, 441 F.3d 119, 129 (2d Cir. 2006) (stating that "the law recognizes a strong presumption that juries follow limiting instructions").

### III. *Sufficiency of the Evidence*

"We review sufficiency of evidence challenges *de novo*, but defendants face a heavy burden, as the standard of review is exceedingly deferential." *United States v. Baker*, 899 F.3d 123, 129 (2d Cir. 2018) (internal quotation marks omitted). "We must view the evidence in the light most favorable to the government, crediting every inference that could have been drawn in the government's favor, and deferring to the

8

jury's assessment of witness credibility and its assessment of the weight of the evidence." *Id.* (internal quotation marks and brackets omitted). On appeal, Scali challenges the sufficiency of the evidence supporting his convictions on Counts One through Five and Eight through Ten.

Scali's argument is unavailing because the evidence presented at trial, viewed in the government's favor, was sufficient to support his convictions. The evidence included, *inter alia*: testimony indicating that Scali (via FedEx) misrepresented to the Sakhaees that he was continuing to preserve their funds in his escrow account (as relevant to Count One); cash deposit statements confirming four separate deposits under $10,000 in less than 24 hours and an e-mail from Scali acknowledging that "all transactions of $10,000 or over are reported by the banks to our Internal Revenue Service," Suppl. App'x at 583 (as relevant to Count Two); letters from Scali to the IRS falsely stating that he previously filed certain tax returns (as relevant to Counts Three and Four); IRS forms delivered to Scali's office as part of an IRS inquiry, requesting Scali to submit missing tax returns (as relevant to Count Five); Scali's sworn affidavit to the SDNY, falsely affirming that his suspension from the New York Bar "had nothing to do with [his] law practice," Suppl. App'x at 665-66 (as relevant to Counts Eight and Nine); and testimony from a client describing Scali's continuing legal representation in 2014, despite the Suspension Order (as relevant to Count Ten). Viewing the evidence both in

9

totality and in the light most favorable to the government, we conclude that there was sufficient evidence to support Scali's convictions.

**IV.    *Jury Instructions***

We review Scali's challenge to the district court's jury instructions for plain error because he did not raise this challenge below. *See United States v. Veliz*, 800 F.3d 63, 76 (2d Cir. 2015). Plain error review applies even "where the defendant did not object because the trial court's decision was correct at the time but assertedly became erroneous due to a supervening legal decision." *United States v. Vilar*, 729 F.3d 62, 70 (2d Cir. 2013). Scali argues that the district court's jury instructions on Count Five, which charged a corrupt endeavor to obstruct and impede the due administration of the internal revenue laws in violation of 26 U.S.C. § 7212(a), requires reversal in light of the Supreme Court's subsequent decision in *Marinello v. United States*, 138 S. Ct. 1101 (2018).

Under the plain error standard, this Court may vacate a conviction on account of a challenged jury instruction if the instruction contains: (1) an error, (2) that is "clear or obvious," (3) affects "substantial rights," and (4) "seriously affects the fairness, integrity or public reputation of judicial proceedings." *United States v. Miller*, 954 F.3d 551, 557-58 (2d Cir. 2020). Under *Marinello*, to find Scali guilty of § 7212(a), a properly-instructed jury would have to find, beyond a reasonable doubt, a nexus -- *i.e.*, a "relationship in time, causation, or logic" -- between Scali's conduct and the IRS proceeding, and Scali's awareness of such proceeding. 138 S. Ct. at 1109-10.

10

Even assuming without deciding that instructional error occurred, we conclude that the special verdict form and substantial evidence presented at trial preclude any claim of reversible plain error. The district court, aware that the Supreme Court was considering the scope of § 7212(a) in *Marinello*, provided the jury with a special verdict form that required the jury to indicate whether it unanimously found that Scali committed one or more of the specified obstructive acts "*after becoming aware of a pending IRS proceeding*, specifically the IRS's civil collection activities." Suppl. App'x at 763 (italics in original). In finding Scali guilty of Count Five, the jury checked "Proved" next to each of the six obstructive acts listed in the special verdict form. Accordingly, the jury's findings make clear that it found the required nexus between Scali's obstructive acts and the pending IRS proceeding of which Scali was aware, rendering any *Marinello* error in the jury instructions non-prejudicial. *See United States v. Beckham*, 917 F.3d 1059, 1064-65 (8th Cir. 2019) (holding a *Marinello* instructional error harmless because the overwhelming evidence established the nexus and knowledge requirement), *cert. denied*, 140 S. Ct. 857 (2020).

* * *

11

We have considered Scali's remaining arguments and find them to be without merit. For the foregoing reasons, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court