IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs September 11, 2001

## JOSE D. HOLMES v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
**No. P-21942     Bernie Weinman, Judge**

---

**No. W2000-02600-CCA-R3-PC - Filed January 30, 2002**

---

The petitioner, Jose D. Holmes, appeals the denial of post-conviction relief by the Criminal Court of Shelby County from his conviction of especially aggravated robbery. In this appeal, the petitioner claims that he received ineffective assistance of counsel. Following a review of the record and the parties' briefs, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court is Affirmed.**

NORMA MCGEE OGLE, J., delivered the opinion of the court, in which THOMAS T. WOODALL and ROBERT W. WEDEMEYER, JJ., joined.

Mark A. Mesler, Memphis, Tennessee, for the appellant, Jose D. Holmes.

Michael E. Moore, Solicitor General; Kim R. Helper, Assistant Attorney General; William L. Gibbons, District Attorney General; and Rosemary Andrews, Assistant District Attorney General, for the appellee, State of Tennessee.

### OPINION

### I.  Factual Background

On October 5, 1994, the petitioner was convicted by a jury in the Shelby County Criminal Court of attempt to commit first degree felony murder and especially aggravated robbery. Pursuant to the petitioner's convictions, the trial court imposed consecutive sentences of sixty years incarceration in the Tennessee Department of Correction. On direct appeal, this court affirmed the petitioner's conviction of and sentence for especially aggravated robbery but reversed the petitioner's conviction of attempt to commit first degree felony murder. See State v. Jose Holmes, No. 02C01-9505-CR-00154, 1997 WL 759429, at *1 (Tenn. Crim. App. at Jackson, December 10, 1997). In reviewing the petitioner's convictions, we briefly summarized the pertinent facts:

> The proof in this matter shows that on September 27, 1993, Ms. Maryan Elam was leaving a parking lot at the Mall of Memphis when she was approached by two men wearing stocking masks. The men approached Ms. Elam's car, pointed a gun at her, and demanded that

she give them money. When Ms. Elam refused, the man she
identified as Appellant shot her through the window of her car
seriously injuring her. Appellant and his compatriot then stole
$15,000 from the trunk of Ms. Elam's vehicle. She had just
withdrawn this money from the bank to take to her place of business.

Three other witnesses positively identified Appellant as a perpetrator
of these crimes. One was a mall patron who actually saw Appellant
shoot and rob Ms. Elam. Another witness saw Appellant fleeing the
crime scene. The final witness saw Appellant run onto a nearby hotel
property and then toward an undeveloped area around Nonconnah
Creek. Approximately an hour after the shooting and robbery, police
found Appellant lying in thick brush near Nonconnah Creek and near
the mall. Under his head was the $15,000 bundle of cash taken from
Ms. Elam's trunk. When arrested Appellant identified himself as
"Thomas Smith." It was discovered sometime later that his name was
actually Jose Holmes.

Id.

Following the issuance of our opinion, on September 21, 1998, our supreme court
denied the petitioner's application for permission to appeal. Exactly one year later, on September
21, 1999, the petitioner filed his petition for post-conviction relief alleging ineffective assistance of
counsel. The post-conviction court appointed new counsel to represent the petitioner and, moreover,
conducted an evidentiary hearing on June 29, 2000.

At the evidentiary hearing, the petitioner testified on his own behalf. The petitioner
related to the post-conviction court that he was represented by the same attorney both at trial and on
direct appeal, and the petitioner alleged numerous instances of ineffective assistance. First, he
complained that his counsel never explained to him that he was proceeding to trial on two separate
charges rather than on a single charge. The petitioner asserted that, therefore, he rejected a plea
bargain in which the State would have agreed to an effective sentence of fifty years incarceration in
the Tennessee Department of Correction. The petitioner further complained that counsel failed to
present at trial the testimony of a security guard who worked at the Mall of Memphis and witnessed
the robbery and shooting. According to the petitioner, the security guard would have provided a
description of the assailants' clothing that did not match the clothing worn by the petitioner at the
time of his arrest. The petitioner similarly complained that counsel failed to introduce at trial or
otherwise utilize a tape recording of a 911 call in which the security guard or possibly another
witness reported the robbery and shooting and provided a description of the assailants' clothing that
tended to exculpate the petitioner. Additionally, the petitioner testified that counsel failed to object
to derogatory remarks made by the prosecutor during closing argument. The petitioner recalled that
the prosecutor referred to him as a "dog[] or snake[] in the grass and just all kind of stuff." The
petitioner also noted that counsel slept during his trial. He specifically remembered that counsel's
eyes were closed during portions of the trial, and counsel did not consult with the petitioner during

-2-

the trial. Finally, the petitioner complained that counsel failed on direct appeal to challenge the sufficiency of the evidence underlying his conviction of especially aggravated robbery.

In rebuttal, the State presented the testimony of the petitioner's trial/appellate counsel. Counsel testified that he had been practicing law in Tennessee since 1963. He further elaborated that his practice was almost entirely in the area of criminal law, and he had participated in approximately five hundred trials during his career. Indeed, he noted that he had previously participated in numerous capital cases.

As to the petitioner's case, counsel confirmed that he represented the petitioner both at trial and on direct appeal. Counsel asserted that he communicated any plea offers by the State to the petitioner. Counsel recalled, however, that the petitioner insisted that he was innocent and declined to consider any plea offer, despite his full knowledge of the potential consequences of proceeding to trial. Accordingly, counsel prepared for trial, visiting the petitioner at the jail and discussing with him the facts of the case in addition to utilizing the results of an "extensive investigation" already undertaken by the district public defender, including reports detailing interviews with various witnesses, and also reviewing a tape recording of the preliminary hearing and copies of written statements given by the petitioner and his co-defendant to the police.

Counsel noted that a security guard employed by the Mall of Memphis did testify at the preliminary hearing in the petitioner's case. However, counsel did not believe that the security guard's testimony was relevant to the petitioner's defense. Moreover, counsel could not recall reviewing or being aware of any tape recording of a 911 call made by either the security guard or any other witness. He did recall that the evidence of the petitioner's guilt was "extremely strong." Indeed, he noted his conclusion on direct appeal that he could not in good faith challenge the sufficiency of the evidence adduced at trial. In this regard, counsel confirmed that, soon after the robbery and shooting, the petitioner was discovered in possession of the $15,000 stolen from the victim. Additionally, the petitioner had in his possession the victim's car keys. Finally, the victim herself identified the petitioner from a photographic line-up as one of her assailants.

Due to the strength of the State's case, counsel opined that any minor discrepancy between the security guard's or any other witness' description of the assailants' clothing and the clothing worn by the petitioner at the time of his arrest would have had little or no impact upon the jury's deliberations. Counsel explained:

> You know, the clothing discrepancy, sometimes, you know, you're talking to a jury. A jury thinks you're grasping for straws, so to speak. And something ridiculously minor, and then it's sort of - - the jury get[]s the idea that he's grasping for straws, he's bringing out ridiculously small points, because he can't meet the main point. And that's the way I try a case. That's my style of trying cases.

Counsel added that he would have utilized the security guard's testimony had the discrepancy been significant.

Counsel conceded that he did not object to any remarks made by the prosecutor during closing argument. He could not, however, specifically recall any derogatory remarks. In any event, he observed:

> I mean, you know, when you're sitting in the second row and they're making argument and I guess, technically, you should get up and jump, "this is prejudicial", maybe that's the way to do it. But, you're concentrating on more of what he said, you know.

Counsel asserted that he responded to the prosecutor's closing argument during his own argument on behalf of the petitioner.

Finally, counsel adamantly denied sleeping during the petitioner's trial, albeit he conceded that he occasionally closes his eyes when listening to testimony during the course of a trial. The attorney concluded that he did "everything that [he] could for [the petitioner]."

On September 14, 2000, the post-conviction court entered an order denying the petitioner post-conviction relief. In the order, the court accredited the testimony of the petitioner's trial/appellate counsel at the post-conviction evidentiary hearing. Moreover, the court noted that it had reviewed the transcript of the trial proceedings, observing that

> [Counsel] did make some objections during the course of the trial. . . . In addition the record reflects that [counsel] cross-examined the witnesses concerning the identification of his client.

> The transcript further reflects that the clothing worn by the petitioner at the time of his arrest was placed into evidence by the State. From the reading of the record the Court finds that raising the issue of insufficiency of the evidence on appeal would have been frivolous. This Court finds the proof against the petitioner at trial was overwhelming. It would appear from the record that the testimony of the security guard, if called as a witness, would not have had an effect on the outcome of the trial. It would appear that the witnesses' testimonies as to the description of the clothing worn by the petitioner was very consistent and was consistent with the clothing taken from Mr. Holmes after his arrest.

> . . . .

> [Counsel] stated he had no recollection of the 911 tape. There is nothing in this record to indicate that the description given on the 911 tape was in any way inconsistent with the descriptions given by the witnesses at trial. As previously pointed out these descriptions were very consistent.

> As a matter of trial strategy, counsel stated that he generally did not object to closing arguments. This would not in any way indicate that

he was ineffective in the representation of Mr. Holmes by implementing this trial tactic.

The trial record reflects that by his responses and questions, [counsel] was awake and alert during the course of the trial. . . .

As previously stated the proof of the defendant's guilt at trial was overwhelming.

The Court finds that the evidence given and services rendered by the defendant's counsel was within the range of competency demanded by an attorney in a criminal case . . . .

## II. Analysis

In appealing the post-conviction court's denial of relief, the petitioner again contends that he received ineffective assistance of counsel at trial and on direct appeal. Specifically, he contends that his counsel rendered ineffective assistance at trial by (1) failing to present the testimony of the Mall of Memphis security guard; (2) failing to introduce or otherwise utilize the tape recording of the 911 call made by the security guard or another witness; (3) failing to object to remarks made by the prosecutor during closing argument; and (4) sleeping during portions of the proceedings. The petitioner also complains that, on direct appeal, counsel failed to challenge the sufficiency of the evidence underlying his conviction of especially aggravated robbery.

In order to establish that these omissions by his attorney contravened the Sixth Amendment to the United States Constitution and Article I, Section 9 of the Tennessee Constitution, the petitioner must demonstrate both that the omissions constituted deficient performance and also that the deficient performance was prejudicial. Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); see also State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999); Henley v. State, 960 S.W.2d 572, 579 (Tenn. 1997); Powers v. State, 942 S.W.2d 551, 558 (Tenn. Crim. App. 1996). On appeal, we need not address these components in any particular order or even address both if the petitioner fails to meet his burden with respect to one. Burns, 6 S.W.3d at 461; Henley, 960 S.W.2d at 580.

Constitutionally deficient performance is representation below an objective standard of reasonableness under prevailing professional norms. Strickland, 466 U.S. at 687-688; 104 S. Ct. at 2064-2065; see also Burns, 6 S.W.3d at 462. More specifically, a petitioner must demonstrate that his counsel's performance was not within the range of competence demanded of attorneys in criminal cases. Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975). In determining whether a petitioner has satisfied his burden, a court should refrain from second-guessing tactical and strategic decisions by defense counsel. Henley, 960 S.W.2d at 579. Rather, the court should defer to such decisions if they are based upon adequate preparation. Burger v. Kemp, 483 U.S. 776, 794-795, 107 S. Ct. 3114, 3126 (1987); see also Hellard v. State, 629 S.W.2d 4, 9 (Tenn. 1982).

-5-

Ultimately, the primary concern of the court should be the fundamental fairness of the proceedings at issue. See, e.g., State v. Mitchell, 753 S.W.2d 148, 149 (Tenn. Crim. App. 1988). Thus, as previously noted, a petitioner must demonstrate prejudicial, as opposed to merely deficient, performance by counsel. In other words, a petitioner must demonstrate a reasonable probability that the result of the proceeding would have been different but for the defective performance of counsel. Henley, 960 S.W.2d at 579. A reasonable probability is a probability sufficient to undermine confidence in the outcome. Strickland, 466 U.S. at 694; 104 S. Ct. at 2068.

A post-conviction court's determinations of whether counsel's performance was deficient and whether that deficiency was prejudicial are conclusions of law that this court reviews "under a purely de novo standard, with no presumption of correctness." Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001). That having been said, in reaching these conclusions of law, the post-conviction court must determine whether the petitioner has proved by clear and convincing evidence any factual allegations underlying his claim of ineffective assistance of counsel. Tenn. Code Ann. § 40-30-210(f) (1997). The post-conviction court's factual findings are binding upon this court unless the evidence preponderates otherwise. Fields, 40 S.W.3d at 458; see also Momon v. State, 18 S.W.3d 152, 156 (Tenn. 1999); Henley, 960 S.W.2d at 578. "In evaluating whether the evidence preponderates against the [post-conviction] court's findings, we are guided by longstanding rules of appellate procedure." Henley, 960 S.W.2d at 578. Thus, questions concerning the credibility of witnesses and the weight and value of their testimony are for resolution by the post-conviction court. Black v. State, 794 S.W.2d 752, 755 (Tenn. Crim. App. 1990). This court will not re-weigh or reevaluate the evidence or substitute its inferences for those of the post-conviction court. Owens v. State, 13 S.W.3d 742, 749 (Tenn. Crim. App. 1999).

Reviewing the post-conviction court's resolution of the petitioner's claim of ineffective assistance of counsel in accordance with the above standards, we preliminarily note the court's substantial reliance upon the transcript of the trial proceedings, which transcript is not included in the record before us. The petitioner carries the burden of ensuring that the record on appeal conveys a fair, accurate, and complete account of what has transpired with respect to those issues that are the bases of appeal. Tenn. R. App. P. 24(b); see also Thompson v. State, 958 S.W.2d 156, 172 (Tenn. Crim. App. 1997); William Robert Cantrell v. State, No. 01C01-9605-CC-00224, 1997 WL 230201, at *2 (Tenn. Crim. App. at Nashville, May 7, 1997). Nevertheless, because the transcript of the trial proceedings was filed with this court on direct appeal, we will take judicial notice thereof for purposes of the current appeal. Delbridge v. State, 742 S.W.2d 266, 267 (Tenn. 1987).

On the basis of the trial transcript, the post-conviction court concluded that "the testimony of the [Mall of Memphis] security guard, if called as a witness, would not have had an effect on the outcome of the trial." More importantly, however, the available transcript reflects that, at the joint trial of the petitioner and his co-defendant, the co-defendant's counsel in fact presented to the jury the testimony of a Mall of Memphis security guard, including the testimony described by the petitioner at the post-conviction evidentiary hearing and alleged by him to have been omitted from the proof at trial. Accordingly, the jury was aware of any discrepancies between the security guard's description of the perpetrators and the appearance of the petitioner and his co-defendant at

the time of their arrest. As suggested by the petitioner's trial/appellate counsel, the discrepancies primarily if not wholly related to the petitioner's co-defendant. In short, the petitioner has established neither deficient performance by counsel in failing to present the security guard's testimony nor any prejudice flowing from counsel's omission.

As to counsel's failure to introduce at trial or utilize a tape recording of a 911 call, the petitioner cites no grounds for its introduction as substantive evidence. Moreover, the petitioner asserted his belief at the post-conviction evidentiary hearing that the Mall of Memphis security guard made the 911 call and that the contents of the tape recording were identical to the security guard's testimony. Finally, the trial transcript reflects that the State's witnesses testified concerning the substance of initial broadcasts to police describing the victim's assailants. These broadcasts, like the security guard's testimony, were largely consistent with the appearance of the petitioner at the time of his arrest.

The available trial transcript does not include counsel's closing arguments. The incomplete state of the record precludes our review of the petitioner's claim that counsel performed below the level of competence demanded of attorneys in criminal cases by failing to object to derogatory remarks made by the prosecutor during closing argument. Notably, however, the record before us suggests that the post-conviction court[1] likewise did not review a transcript of counsel's closing arguments. Rather, the post-conviction court concluded as a matter of law that counsel's stated preference for avoiding objections during closing argument constituted reasonable trial strategy.

Concededly, at least one court has rejected the converse of the post-conviction court's conclusion, i.e. that counsel's failure to object to improper closing argument is deficient representation as a matter of law. United States v. Molina, 934 F.2d 1440, 1448 (9th Cir. 1991). In Molina, id., the United States Court of Appeals for the Ninth Circuit explained that,

> [f]rom a strategic perspective, . . . many trial lawyers refrain from objecting during closing argument to all but the most egregious misstatements by opposing counsel on the theory that the jury may construe their objections to be a sign of desperation or hyper-technicality. Too, it may be that [defense counsel] thought the prosecutor was making an argument helpful to his client's case, and simply did not want to distract him. In a more mundane vein, perhaps defense counsel was polishing his own closing argument, or was otherwise inattentive during the relevant part of the prosecutor's closing. Whatever the actual explanation, Strickland requires us to "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." 466 U.S. at 689, 104 S. Ct. at 2065. We cannot say that the failure to object to . . . one

---

[1]We further note that the judge presiding over these post-conviction proceedings did not preside over the petitioner's trial.

-7-

improper passage in the prosecutor's closing argument was professionally unreasonable.

In the instant case, however, the petitioner alleged more than a single improper passage in the prosecutor's closing argument, claiming that the prosecutor referred to him as a "dog[]" or "snake[] in the grass" throughout closing argument. A prosecutor's use of derogatory remarks or name-calling during closing argument generally does constitute misconduct. State v. Bane, 57 S.W.3d 411, 425 (Tenn. 2001). Moreover, we do not believe that an attorney's policy against objecting during closing argument will, as a matter of law, be reasonable regardless of the magnitude or extent of a prosecutor's misconduct. In other words, the post-conviction court's determination of whether counsel rendered deficient performance in failing to object to the prosecutor's remarks, like our determination on appeal, required the transcription of closing arguments.

In the event a post-conviction petitioner states a colorable claim, Tenn. Sup. Ct. Rule 28, § 6(B)(3)(d) obligates the post-conviction court to enter a preliminary order that "orders the state to respond and, if appropriate, to file with the clerk certain transcripts, exhibits, or records from the prior trial or hearing." See also Lane v. State, 968 S.W.2d 912, 914-915 (Tenn. Crim. App. 1997). The post-conviction court in this case failed to enter a preliminary order in accordance with the above rule. However, at the conclusion of the post-conviction evidentiary hearing, the court asked the parties to obtain the trial transcript for its consideration. The petitioner volunteered through counsel to provide the requested transcript. Accordingly, the petitioner must bear any detriment flowing from the transcript's incomplete state. Tenn. R. App. P. 36(a). In any event, we must agree with both the petitioner's counsel and the post-conviction court that the proof of the petitioner's guilt was simply overwhelming. In other words, even assuming that counsel's failure to object to the prosecutor's remarks constituted deficient performance, the petitioner has failed to demonstrate a reasonable probability that the result of his trial would have been different but for the deficiency. Cf. Kellog v. Skon, 176 F.3d 447, 451-452 (8th Cir. 1999).

Turning to the petitioner's allegation at the post-conviction evidentiary hearing that his attorney slept during his trial, the record does not preponderate against the post-conviction court's finding that trial counsel was "awake and alert." Cf. George Campbell, Jr., v. State, No. W2000-00703-CCA-R3-PC, 2001 WL 1042112, at **5-6 (Tenn. Crim. App. at Jackson, September 10, 2001), perm. to appeal denied, (Tenn. 2001). As noted by the post-conviction court, the trial transcript contains no indication that the petitioner's counsel slept through any portion of the trial. Moreover, counsel himself testified to the contrary, and we defer to the post-conviction court's assessment of his credibility. Black, 794 S.W.2d at 755.

Finally, we note our supreme court's observation that there is no constitutional requirement that an attorney argue every issue on appeal. Cooper v. State, 849 S.W.2d 744, 747 (Tenn. 1993). Rather, the determination of the issues to present on appeal addresses itself to the professional judgment and sound discretion of appellate counsel. Porterfield v. State, 897 S.W.2d 672, 678 (Tenn. 1995). The record in this case reflects that trial/appellate counsel's exercise of professional judgment and discretion in declining to challenge the sufficiency of the evidence

-8-

underlying the petitioner's convictions was well within the range of competency expected of a criminal defense attorney. In this regard, we reiterate our agreement with both counsel and the post-conviction court that the proof of the petitioner's guilt was overwhelming.

### III.  Conclusion

For the foregoing reasons, we affirm the judgment of the post-conviction court.

_____
NORMA McGEE OGLE, JUDGE