

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

———————————————

No. 02-22-00276-CR

———————————————

MANUEL MENDOZA JR., Appellant

V.

THE STATE OF TEXAS

———

On Appeal from the 78th District Court
Wichita County, Texas
Trial Court No. 60,068-B-1

———

Before Kerr, Bassel, and Womack, JJ.
Memorandum Opinion by Kerr

**MEMORANDUM OPINION**

In two issues, Manuel Mendoza Jr. challenges his convictions for one count of aggravated sexual assault of a child and two counts of indecency with a child, on ineffective-assistance-of-counsel grounds, arguing that his attorneys' failure to object to (1) the trial court's *Allen* charge[1] and (2) the State's punishment-phase closing argument constituted deficient performance that prejudiced him. We affirm.

**Procedural Background**

A jury found appellant guilty of one count of aggravated sexual assault of a child and two counts of indecency with a child; the same jury acquitted appellant of another indecency count.[2] According to the jury's assessment, the trial court sentenced appellant to twenty years' confinement for the aggravated sexual assault—to be served consecutively with the two indecency counts—and ten years' confinement on each indecency count—to be served consecutively with each other. In two appellate issues, appellant seeks reversal on ineffective-assistance-of-counsel grounds, based on his attorneys' failure to object.

---

[1]An "*Allen*" or "dynamite" charge is one instructing a deadlocked jury to continue deliberating. *Clark v. State*, 952 S.W.2d 882, 888 (Tex. App.—Beaumont 1997, no pet.) (citing *Allen v. United States*, 164 U.S. 492, 17 S. Ct. 154 (1896)). An *Allen* charge is a supplemental jury instruction that "reminds the jury that if it is unable to reach a verdict, a mistrial will result, the case will still be pending, and there is no guarantee that a second jury would find the issue any easier to resolve." *Barnett v. State*, 189 S.W.3d 272, 277 n.13 (Tex. Crim. App. 2006).

[2]Appellant committed three alleged acts (including the act for which the jury acquitted him) against one child, and the remaining act against a different child.

# No Ineffective Assistance

## Standard of review

Because both of appellant's issues challenge his trial attorneys' effectiveness, albeit at different stages of the trial, we apply the same standard of review to both complaints. To establish ineffective assistance, an appellant must prove by a preponderance of the evidence that his counsel's representation was deficient and that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Nava v. State*, 415 S.W.3d 289, 307 (Tex. Crim. App. 2013); *Hernandez v. State*, 988 S.W.2d 770, 770 (Tex. Crim. App. 1999). The record must affirmatively demonstrate that the claim has merit. *Thompson v. State*, 9 S.W.3d 808, 813 (Tex. Crim. App. 1999).

In evaluating counsel's effectiveness under the deficient-performance prong, we review the totality of the representation and the particular circumstances of the case to determine whether counsel provided reasonable assistance under all the circumstances and prevailing professional norms at the time of the alleged error. *See Strickland*, 466 U.S. at 688–89, 104 S. Ct. at 2065; *Nava*, 415 S.W.3d at 307; *Thompson*, 9 S.W.3d at 813–14. This review is highly deferential, and we indulge a strong presumption that counsel's conduct was not deficient. *Nava*, 415 S.W.3d at 307–08.

*Strickland*'s prejudice prong requires a showing that counsel's errors were so serious that they deprived the defendant of a fair trial—that is, a trial with a reliable result. *Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064. In other words, an appellant must

show a reasonable probability that the proceeding would have turned out differently without the deficient performance. *Id.* at 694, 104 S. Ct. at 2068; *Nava*, 415 S.W.3d at 308. "[A] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." *Id.*, 104 S. Ct. at 2069.

When an appellant alleges deficient performance based on his trial counsel's failure to object, he must show that the trial court would have erred by overruling that objection. *See Prine v. State*, 537 S.W.3d 113, 117–18 (Tex. Crim. App. 2017). Thus, in resolving appellant's complaints, we review whether the trial court should have sustained objections to the *Allen* charge or to the State's closing argument. *See, e.g., Holt v. State*, No. 02-21-00216-CR, 2022 WL 17351582, at *3–4 (Tex. App.—Fort Worth Dec. 1, 2022, pet. ref'd) (mem. op., not designated for publication); *Clark*, 952 S.W.2d at 888.

## *Allen* charge

Appellant argues that because the jury had been in court since 9:08 a.m. that same day, the *Allen* charge was unreasonably oppressive, the trial court should have allowed the jury to leave and return the next Monday, and his attorneys performed deficiently by not objecting to the charge. According to appellant, the *Allen* charge was impermissibly coercive because the jury did not have water and because the charge immediately followed two jury notes.

4

**Review of *Allen* charge**

The United States Supreme Court and Texas Court of Criminal Appeals have both approved the use of noncoercive *Allen* charges because they advance the jury system's "very object," which is "to secure unanimity by a comparison of views, and by arguments among the jurors themselves." *Allen*, 164 U.S. at 501, 17 S. Ct. at 157; *Howard v. State*, 941 S.W.2d 102, 123 (Tex. Crim. App. 1996) (quoting *Allen*), *overruled in part on other grounds by Easley v. State*, 424 S.W.3d 535, 538–39 & n.23, 541 (Tex. Crim. App. 2014), *and modified in part on other grounds by Simpson v. State*, 119 S.W.3d 262, 265–66 (Tex. Crim. App. 2003). Thus, trial counsel is not ineffective for failing to object to an *Allen* charge that is not coercive. *Jones v. State*, 986 S.W.2d 358, 362 (Tex. App.—Beaumont 1999, pet. ref'd).

An *Allen* charge is coercive if it pressures jurors into reaching a particular verdict or improperly conveys the trial court's opinion of the merits. *West v. State*, 121 S.W.3d 95, 107–08 (Tex. App.—Fort Worth 2003, pet. ref'd). Even a charge not coercive on its face may have a coercive effect "in its context and under all the circumstances." *Lowenfield v. Phelps*, 484 U.S. 231, 237, 108 S. Ct. 546, 550 (1988) (quoting *Jenkins v. United States*, 380 U.S. 445, 446, 85 S. Ct. 1059, 1060 (1965)); *see also Heide v. State*, No. 02-20-00056-CR, 2021 WL 2460734, at *5 (Tex. App.—Fort Worth June 17, 2021, pet. ref'd) (mem. op., not designated for publication). Appellant argues that this charge was coercive under the circumstances.

Whether the circumstances surrounding an *Allen* charge show that actual jury coercion occurred depends on a number of nonexclusive factors: (1) the case's nature; (2) the deliberations' length before and after the *Allen* charge; (3) whether the jury had to endure "marathon deliberations"; (4) the number of *Allen* charges given; (5) the trial court's knowledge of or inquiry into the jury's numerical division; (6) whether the trial court singled out or pressured the minority jurors; (7) whether the *Allen* charge cautioned the jurors not to violate their consciences; (8) the jury's notes and requests to review evidence after the *Allen* charge; and (9) whether the jurors each affirmed the verdict upon polling. *See Heide*, 2021 WL 2460734, at *6.

**Applicable facts**

The last day of the guilt–innocence phase began at 9:08 a.m. on Friday,[3] October 21, 2022. The jury took a 24-minute break at 10:11 a.m. and a lunch break from 11:23 a.m. to 1:35 p.m. After hearing the charge and closing arguments, the jury retired to deliberate at 3:05 p.m. At 4:46 p.m., the jury sent a note indicating it was deadlocked and asking if it could come back on Monday. After reading the note to the attorneys, the trial judge said, "The answer is, No, you must continue to deliberate. Any objection from the State about that?" The prosecutor answered, "No." One of appellant's two attorneys also answered that he had no objection.

---

[3]The record does not show the day of the week, but we can take judicial notice that October 21, 2022, fell on a Friday. *Deaton v. State*, 948 S.W.2d 371, 372 n.1 (Tex. App.—Beaumont 1997, no pet.).

At 6:08 p.m., the jury sent another note: "If we cannot come to an agreement on one or two charges, do the charges we agree on stick?" At that point, the State recommended that the trial court prepare an *Allen* charge, and one of appellant's trial attorneys stated that he had no objection. The trial court gave the attorneys an opportunity to review the charge, and defense counsel again said he had no objection.

Between 6:37 p.m. and 6:41 p.m., the trial court gave the jury the following instruction:

> Members of the jury, you are instructed that in a large proportion of cases, absolute certainty cannot be expected. Although the verdict must be the verdict of each individual juror and not a mere acquiescence in the conclusion of other jurors, each juror should show a proper regard to the opinion of the other jurors.
>
> If this jury finds itself unable to arrive at a unanimous verdict, it will be necessary for the Court to declare a mistrial and discharge the jury. The indictment will still be pending, and it is reasonable to assume that the case will be tried again before another jury at some future time.
>
> Any such future jury will be impaneled in the same way this jury has been impaneled and will likely hear the same evidence which has been presented to this jury. The questions to be determined by that jury will be the same questions confronting you, and there is no reason to hope the next jury will find these questions any easier to decide than you have found them.
>
> With this additional information, you are instructed to continue deliberations in an effort to arrive at a verdict that is acceptable to all members of the jury if you cannot do so -- if you can do so without doing violence to your conscience.

At 7:20 p.m., the jury announced its verdict in court.

**Factor application**

In discussing the *Allen* charge before the trial judge gave it to the jury, the prosecutor asked the trial judge, "Do they have water back there?" The trial judge answered that it was unlikely. The prosecutor then said, "I think the record needs to be clear they have not asked for breaks," but also questioned whether the jurors should be given a water break. The trial judge answered, "We have some bottled water in our office. When we put them back in there, maybe we'll grab some and take it back there." After the prosecutor expressed concern about "not forcing [the jury] through discomfort into any kind of decision," the trial judge stated, "We should be able to wrangle up some water between all of our offices." It was not until after this exchange that the prosecutor said the State had no objection to the *Allen* charge. Then, after giving the jury the *Allen* charge, the trial judge told the jury, "I know the big water thing is empty, so we are going to wrangle up some water to bring back to you, if you'll go back to deliberate." Thus, contrary to appellant's assertion, the record does not affirmatively show that the trial court deprived the jury of water.

When the trial court gave the *Allen* charge, the jury had listened to three days of guilt–innocence evidence that involved allegations that appellant had committed multiple sexual acts against one child and another act with a second child. Both complainants testified; for one complainant, an eight-year gap between the events and her outcry had elapsed, and for the other, an over ten-year gap had elapsed. Consequently, the police collected no DNA or biological evidence. And although one

of the complainants testified that appellant had committed two of the alleged offenses against her, she denied that he had committed a third alleged offense;[4] her testimony conflicted with what she had earlier told a police investigator. Therefore, the main issue the jury had to decide was whether the complainants were credible; after it did so, there was not much left for it to consider other than to resolve appellant's guilt of the offense that one of the complainants had initially reported but expressly denied at trial.

The jury had not deliberated even two hours before it first announced its deadlock at 4:46 p.m. The trial judge declined to give an *Allen* charge at that time and instead simply told the jury to continue deliberating. *See Ex parte Perusquia*, 336 S.W.3d 270, 276 (Tex. App.—San Antonio 2010, pet. ref'd); *see also Thetford v. State*, No. 02-18-00488-CR, 2021 WL 278913, at *15 (Tex. App.—Fort Worth Jan. 28, 2021), *rev'd on other grounds*, No. PD-0258-21, 2021 WL 2674484 (Tex. Crim. App. June 30, 2021).[5] The jury then deliberated almost an hour and a half before sending a second note that possibly shows it had agreed on guilt for at least two of the alleged offenses.[6] A half

---

[4]The jury acquitted appellant on this offense.

[5]In accordance with the Court of Criminal Appeals's mandate, on remand we addressed the evidence's sufficiency and concluded that because it was sufficient, the conviction and sentence should be affirmed. *Thetford v. State*, 643 S.W.3d 441, 442–43, 453 (Tex. App.—Fort Worth 2022, pet. ref'd).

[6]As the State points out, we cannot be certain what the jury meant; the note could have indicated that the jury was concerned that a mistrial would be granted on

9

hour after receiving the second note, the trial court gave the *Allen* charge, and the jury deliberated 39 minutes more before announcing its verdict.

These deliberations can hardly be considered "marathon" even though the jury had been in court that day since 9:08 a.m. The trial court had given the jury a short morning break and a two-hour lunch break. That the jury stayed until 7:20 p.m. on a Friday rather than another day of the week is of no moment, considering the time the jury received the case and the absence of other details such as its being a holiday weekend. *See United States v. Andaverde-Tiñoco*, 741 F.3d 509, 517–18 (5th Cir. 2013).

And although the 39 minutes the jury deliberated after the *Allen* charge is relatively short, that time is less susceptible of indicating coercion in light of the jury's second note, which appeared to show some kind of partial agreement. *See Heide*, 2021 WL 2460734, at *6; *Gonzales v. State*, No. 02-16-00136-CR, 2017 WL 710639, at *2–4 (Tex. App.—Fort Worth Feb. 23, 2017, no pet.) (mem. op., not designated for publication); *Minze v. State*, No. 02-15-00352-CR, 2016 WL 4474352, at *4–5 (Tex. App.—Fort Worth Aug. 25, 2016, no pet.) (mem. op., not designated for publication).

Nothing in the record shows that the trial judge knew of or asked about the jury's numerical division, nor did the trial judge single out or pressure any particular juror. The one *Allen* charge told the jurors that they should come to a verdict only if

---

all charges, even if it had agreed to acquit on one or more of them. Thus, we do not interpret the note as showing that the trial court knew about the jury's disposition such that it was able to use the charge to coerce any particular juror or jurors.

doing so did not violate their consciences. The jury did not send any additional notes or ask for any other evidence after the trial judge gave the *Allen* charge, and each juror affirmed the verdict upon polling.

Based on the totality of these circumstances, we conclude that appellant did not meet his burden to show that the *Allen* charge was improperly coercive; therefore, the trial court would not have abused its discretion by overruling an objection to it, and counsel cannot be ineffective for declining to object to it. *See Jones*, 986 S.W.2d at 362; *Clark*, 952 S.W.2d at 888. We overrule appellant's first ineffective-assistance complaint.

**Closing argument**

Appellant also complains about his trial attorneys' failure to object to the State's punishment-phase closing argument: "These are what those girls looked like when he took them and did what he wanted [referring to photographs of the complainants at around the same age as they were at the time of the offenses]. You have met the family that chooses to support the *monster*. They deserve to be protected, these girls." [Emphasis added.] Later in his argument, the prosecutor stated, "They [the complainants] have stood firm in the face of what kind of pressure? The people that are supposed to love them choose the *monster* over them." [Emphasis added.]

Proper jury argument generally falls within one or more of the following areas: (1) summation of evidence; (2) reasonable deduction from the evidence; (3) answer to argument of opposing counsel; and (4) plea for law enforcement. *Freeman v. State*,

11

340 S.W.3d 717, 727 (Tex. Crim. App. 2011) (citing *Brown v. State*, 270 S.W.3d 564, 570 (Tex. Crim. App. 2008)). Thus, when reasonably deduced from the evidence, derogatory characterizations of a defendant—such as referring to the defendant as a monster[7] or animal—are permissible. *See Barnard v. State*, 730 S.W.2d 703, 718 (Tex. Crim. App. 1987); *Burns v. State*, 556 S.W.2d 270, 285 (Tex. Crim. App. 1977); *Holt*, 2022 WL 17351582, at *3–4; *Belton v. State*, 900 S.W.2d 886, 898 (Tex. App.—El Paso 1995, pet. ref'd); *see also Ponce v. State*, 89 S.W.3d 110, 121 (Tex. App.—Corpus Christi–Edinburg 2002, no pet.) ("Dramatic epithets may be used against a defendant during closing arguments as proper deductions based upon the evidence and nature of the crime.").

The complained-of arguments occurred while the prosecutor was emphasizing how appellant had taken advantage of his close relationship with the complainants and how the complainants' large, extended family had supported appellant over them, despite the abuse's lasting physical and emotional effects on one of the complainants.

_____

[7]The following cases specifically deal with the term "monster." *Holt*, 2022 WL 17351582, at *3–4 (holding that facts in case justified characterization of appellant as "monster"); *Cedillos v. State*, No. 08-14-00180-CR, 2018 WL 4113169, at *7 (Tex. App.—El Paso Aug. 29, 2018, pet. ref'd) (not designated for publication) (same); *Resendez v. State*, No. 14-99-01374-CR, 2001 WL 777861, at *2 (Tex. App.—Houston [14th Dist.] July 12, 2001, pet. ref'd) (per curiam) (not designated for publication) (same); *Davis v. State*, No. 05-96-01949-CR, 1998 WL 324724, *2 (Tex. App.—Dallas June 22, 1998, no pet.) (not designated for publication) (same). *But see Ponce v. State*, 299 S.W.3d 167, 174–75 (Tex. App.—Eastland 2009, no pet.) (holding that use of "monster" to refer to defendant was improper but harmless).

During the punishment phase, the prosecutor asked appellant's brother, "Which of those individuals pictured [referring to a family photo] vocally and actively came to the defense of [complainants'] when those allegations were made?" He answered, "None." Appellant's stepbrother—a law-enforcement officer—testified that he was "standing by [appellant's] side 100 percent." He did not believe appellant had done anything to the complainants. Appellant's wife testified that she would continue to support him despite the jury's verdict. And at guilt–innocence, appellant's stepmother had testified on his behalf and denied that one of the complainants had ever stayed at her house (where that complainant testified the offenses against her had occurred); appellant's stepmother also said that complainant was lying about the stepmother's making her sleep in the bedroom with her male relatives.

The other complainant testified that she had engaged in "cutting" because of the offense against her; she had also experienced incontinence into her teens. After making her outcry, she was "severely depressed" and had panic attacks. Her mother testified that the complainant had been suicidal, was "broken," and had needed "intensive psychotherapy."

Meanwhile, appellant had served as a youth pastor, and he continued working with minors in church even after the complainants had made the allegations against him.

The evidence thus showed that appellant had, at different times, taken opportunistic advantage of his access to prepubescent relatives to commit sexual

13

offenses against them. The complainants gave graphic testimony about the acts and how appellant had hurt them physically and emotionally. And despite the fact that the complainants and family witnesses described a large, close-knit family, several members of that family supported appellant rather than the complainants. The prosecutor's "monster" remarks were in the context of juxtaposing for the jury the tender age and innocence of the complainants at the time of the offenses—and the serious consequences that at least one of them had endured as a result—with the family's lack of support.

Thus, appellant has not shown that the trial court would have erred by overruling an objection to these parts of the State's closing argument[8] and cannot

---

[8]Appellant relies on two federal and two state cases to argue that the prosecutor's "extreme or manifestly improper" comment biased the jury and interfered with its verdict. *See Kellogg v. Skon*, 176 F.3d 447, 451–52 (8th Cir. 1999); *United States v. Cannon*, 88 F.3d 1495, 1502–03 (8th Cir. 1996), *abrogated in part on other grounds by Watson v. United States*, 552 U.S. 74, 128 S. Ct. 579 (2007); *Tompkins v. State*, 774 S.W.2d 195, 217–18 (Tex. Crim. App. 1987), *aff'd*, 490 U.S. 754 (1989); *Ponce*, 299 S.W.3d at 175. But in all of these cases, the improper comment was made at guilt–innocence and therefore affected the innocence presumption. And in all but *Cannon*, the courts held the improper argument to be harmless. Thus, they do not compel a different result here. Nor does *Milton v. State*, 572 S.W.3d 234, 236–37, 244 (Tex. Crim. App. 2019), in which the Texas Court of Criminal Appeals held that the playing of a video of a lion trying to eat a child through protective glass was an improper use of a demonstrative aid in a "simple robbery case." This case is distinguishable from *Milton* because these offenses involved a more egregious violation of a close personal relationship—with children—thus making the hyperbolic "monster" analogy more apt, and because the references were much less prevalent and dramatic.

14

show that his attorneys' performance was deficient on that basis.[9] *See Prine*, 537 S.W.3d at 117–18. We overrule appellant's second issue.

## Conclusion

Having overruled both of appellant's issues, we affirm the trial court's judgment.

/s/ Elizabeth Kerr
Elizabeth Kerr
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: July 27, 2023

---

[9]Additionally, even if the trial court would have erred by overruling such an objection, we would not hold that appellant's trial attorneys performed deficiently because the record does not show why they did not object; they could have been trying not to call the jury's attention to the characterization. *See Garcia v. State*, 57 S.W.3d 436, 440 (Tex. Crim. App. 2001); *see also, e.g.*, *Holt*, 2022 WL 17351582, at *4; *Sabatini v. State*, No. 14-20-00066-CR, 2020 WL 7866724, at *7 (Tex. App.—Houston [14th Dist.] Dec. 31, 2020, no pet.) (mem. op., not designated for publication) (citing *Garcia*, 57 S.W.3d at 441).